Opinion by: Marialyn Barnard, Justice
A jury found appellant Janie Meza guilty of endangering a child. The trial court sentenced Meza to two years' confinement, probated for two years. On appeal, Meza contends: (1) the trial court erred in denying her motion to quash; (2) the trial court erred in permitting a police officer to testify about Meza's possible drug consumption; and (3) the evidence is insufficient to sustain the conviction.[2] We affirm the trial court's judgment.
BACKGROUND
Sometime after 11:00 p.m., Walter Ortiz Gonzalez, an employee of the InTown Suites hotel, received a telephone call from a guest, who was concerned about a "little girl" running around in the building. Upon investigation, Mr. Gonzalez saw a little girl running around in the building and climbing on the third floor balcony. Mr. Gonzalez stated he did not see an adult with the girl; he was concerned for her safety. He testified he feared she would fall "or someone will rape her." Mr. Gonzalez called the police. While he was waiting for authorities to arrive, he asked the little girl, "Where is your mom?" The girl could not speak very well, saying only, "My mommy. Mommy. Mom." The little girl then ran toward a car parked in the hotel parking lot next to a dumpster. Mr. Gonzalez approached the car and saw a woman "sleeping" inside; the motor of the car was running. The child knocked on the car door repeating, "Mom. Mom. Mom." However, the woman did not wake up until authorities arrived and woke her up.
Mr. Gonzalez testified that as part of his duties, he is required to clean up the parking lot every morning and then again before he leaves. He stated there are often broken bottles and other debris in the parking lot, especially around the dumpster, which is sometimes overfilled. Mr. Gonzalez also stated the hotel is located on a very busy roadway, which is busy even in *677 the evenings. He also advised that guests' cars enter and leave the parking lot at all hours of the night.
Officers Travis Gourley and Newman[3] of the San Antonio Police Department were working with the DWI unit near the InTown Suites when the 911 call made by Mr. Gonzalez appeared on the patrol car computer screen.[4] Because they were close to the InTown Suites, they took the call. Based on information from the patrol car computer, they knew the call concerned "a small child walking around the complex unattended" and it was suspected "the mother of the child was passed out in a parked vehicle" in the hotel parking lot. The officers had a description of the car and when they arrived, they found a car matching the description in the back of the InTown Suites' parking lot. When they approached, the car's headlights were on and the engine was running. Officer Gourley stated he suspected the car was occupied, but he could not see any movement within the car.
Officer Gourley also saw a child walking with two men near the hotel. He estimated the child was between four and six years old. He believed she was barefoot. The officers approached the car and saw "a female sleeping in the front seat." At trial, Officer Gourley identified the "female" as Meza. He tried to open the driver's door, but it was locked. Officer Newman was able to open the unlocked passenger-side door, and Officer Gourley, who had moved to the passenger side of the car, was then able to reach inside and turn off the motor. At that point, the child entered the car and woke up the driver. It was ultimately determined Meza was the child's mother.
Officer Gourley returned to the driver's side of the vehicle and opened the door. When he did, he saw a "nearly empty" bottle of wine in plain view. When he began talking with the driver-Meza-he detected "a faint odor of intoxicants." Meza "admitted to drinking something," but her answers to officers were confusing. Meza claimed she was at the hotel to meet a friend, but the friend never showed up. Meza claimed she put her daughter to sleep in the car and she then fell asleep.
Officer Gourley stated he and Officer Newman conducted a DWI investigation given the circumstances. At trial, he described the standardized field sobriety tests: (1) the horizontal gaze nystagmus ("HGN") test where officers look for an "involuntary jerking" of the subject's eyes, which can be caused by alcohol or a central nervous system ("CNS") depressing drug; (2) the walk-and-turn test where the subject is required to take nine heel-to-toe steps in a straight line and then return to the starting point; and (3) the one-leg stand where the subject is asked to stand on one foot with his or her hands to the side, counting out loud for approximately thirty seconds. Officer Gourley supervised Officer Newman as she administered the tests. At the conclusion of the testing, and based on other observations, the officers suspected Meza had been driving under the influence and arrested her. Although Meza agreed to take a breath test at the scene, the officers did not have the capability to administer the test there.
Ultimately, after the officers obtained a search warrant, a blood draw was taken *678 from Meza approximately two hours after the 911 call was received. The results established Meza was not intoxicated, and the evidence showed the charge of "DWI with a child" was dismissed for insufficient evidence. However, Officer Gourley opined, based on his training and experience, that because alcohol was ruled out, he believed Meza was under the influence of some sort of drug, a depressant. Officer Gourley, who received training as a "drug recognition expert" ("DRE"), explained that because nystagmus was present during the HGN portion of the field sobriety test-as well as other intoxication indicators, but alcohol was ruled out as the cause, he suspected Meza was under the influence of a CNS depressing drug.
In addition to Officer Gourley, the State also produced testimony from Officer Eric Theodore Alvarez and Detective Alison Tamez. Officer Alvarez, a patrol officer with SAPD, testified the InTown Suites is in the area where he was assigned to patrol at the time Meza and her child became the subject of the 911 call. He stated that during the time he patrolled that area, it was the subject of numerous police calls, including calls for assaults, vehicle thefts, shootings, prostitution, rapes, and drug activity. More specifically, he testified he had responded to calls at the InTown Suites, which included calls for disturbances by the homeless, drug activity, family violence, assaults, burglaries, thefts, and stolen vehicles.
Officer Alvarez testified that around 11:30 p.m., he and his partner that evening, Detective Tamez, were dispatched to the InTown Suites "for an individual that was asleep in a vehicle and a child was walking the parking lot of the hotel." When they arrived, Officers Gourley and Newman were already there. At that time, Meza was awake and the officers were speaking with her. Mr. Gonzalez, the hotel employee who had called 911, approached Officer Alvarez, and when the officer learned he was the 911 caller, he asked him what had happened. Officer Alvarez also spoke to the hotel guest who first saw the little girl roaming the hotel grounds and reported it to Mr. Gonzalez.
Officer Alvarez stated that when he and Detective Tamez arrived, he saw a little girl who he estimated to be four to five years of age. He testified his primary job at the scene was to deal with the safety of the child and to find out what led to her "being left unattended in the parking lot." Officer Alvarez said the little girl was dressed, but had no shoes on. The officer stated there was debris in the parking-"rocks all over the place" and "broken glass." Officer Alvarez ultimately took the child-and a dog that was with the child-to her grandfather's house. This was the home where both Meza and her daughter lived.
Detective Tamez, now a detective with the SAPD Special Victims Unit, but at the time a "uniformed evidence detective," testified that when she and Officer Alvarez arrived, the little girl was sitting in the back of her mother's car. She said she took it upon herself to watch the child because the other on-scene officers were busy with Meza and the witnesses. Detective Tamez testified the girl was four years old and was barefoot. In addition, the detective discovered the little girl was not wearing any underwear. Both the child's shoes and underwear were found in Meza's car. Detective Tamez stated the little girl was very active, but her verbal skills "weren't as great. Didn't-wasn't able to converse with her very much." Because the child was crying for her mother, the detective tried to distract her, instigating a "hunt" for a purple rock in the parking lot, but only after she had retrieved the child's shoes and put them on her.
*679 Detective Tamez, who had also previously responded to calls at the hotel, noted there were many things in the lot that posed a danger to a child. She noted that cars were coming and going in the dark, there was broken glass in the lot, and the hotel was next to a very busy street with a history of "lots of accidents[s]." Despite these hazards, Detective Tamez testified Meza "didn't really seemed too concerned" that her child was wandering around the parking lot alone. Meza told authorities the child had autism and was "known to escape," but she did not seem very concerned. And although Meza was upset, it was at officers, not that her child had been wandering around alone.
Detective Tamez was the State's last witness; Meza did not present any witnesses on her behalf. After arguments and reading of the charge, the jury retired to deliberate. The jury found Meza guilty of child endangerment, and the trial court sentenced her to two years' confinement, probated. Thereafter, Meza perfected this appeal.
ANALYSIS
As set out above, Meza raises three issues on appeal. First, she contends the trial court erred in denying her motion to quash the indictment. Second, she asserts the trial court erred in permitting Officer Gourley to opine that Meza was under the influence of drugs because this testimony: (1) was speculative as it was not based on personal knowledge, and (2) was inadmissible expert testimony because the HGN test was not properly administered. Finally, Meza claims the evidence is legally insufficient to support her conviction because there was no evidence of "imminent danger" to the child. We address each contention in the order presented.
Motion to Quash Indictment
In her first appellate issue, Meza challenges the trial court's refusal to grant her motion to quash the indictment. Meza raises several arguments with regard to her claim that the indictment should have been quashed. First, Meza argues the indictment improperly "sought to criminalize the mere consumption of a drug and alcohol." She asserts the indictment failed to allege intoxication as the result of ingestion of drugs or alcohol or that any drug ingested was illegal. Thus, according to Meza, because the indictment alleged facts that, even if proven, would not constitute a criminal offense, the indictment was defective.
Second, she argues the indictment failed to provide adequate notice as it was vague and overly broad. Specifically, she claims that because the indictment failed to allege what constituted "imminent danger," the indictment failed to provide the constitutionally required notice. She also takes issue with the phrases "consuming a drug or alcohol" and "leaving a child unsupervised in a parking lot." She argues these phrases also fail to provide adequate notice.
Finally, she contends the State was required to elect the method by which she committed child endangerment before the case went to the jury because the evidence failed to support the allegation of drug consumption. She bases this contention on her claim the State failed to produce any evidence she consumed drugs, arguing the testimony from Officer Gourley was mere speculation.
Standard of Review
Appellate courts conduct a de novo review of a trial court's rulings on a motion to quash a charging instrument. State v. Zuniga , 512 S.W.3d 902, 906 (Tex. Crim. App. 2017) ; see *680 State v. Jarreau , 512 S.W.3d 352, 354 (Tex. Crim. App. 2017) (citing State v. Moff , 154 S.W.3d 599, 601 (Tex. Crim. App. 2004) ). A de novo review is mandated because the sufficiency of an indictment is a question of law, Zuniga , 512 S.W.3d at 906, and when the resolution of a question of law does not turn upon an evaluation of a witness's credibility and demeanor, the trial court is in no better position to make the determination than is the appellate court. Moff , 154 S.W.3d at 601.
Application
1. Criminalization of Otherwise Legal Behavior
Meza first contends the trial court erred in denying her motion to quash the indictment because the indictment sought "to criminalize the mere consumption of a drug and alcohol." We disagree with Meza's interpretation of the indictment.
The indictment states:
[O]n or about the 1st Day of September, 2014, JANIE MEZA, hereinafter referred to as defendant, did INTENTIONALLY, KNOWINGLY, AND RECKLESSLY engage in conduct that placed [S.M.], a child who was younger than fifteen (15) years of age, in imminent danger of BODILY INJURY by consuming a drug and alcohol and leaving said child unsupervised in a parking lot; and the defendant did not voluntarily deliver the child to a designated emergency infant care provider under Section 262.302, Family Code [.]
The Texas Penal Code states a person endangers a child if she "intentionally, knowingly, recklessly, or with criminal negligence, by act or omission, engages in conduct that places a child younger than 15 years in imminent danger of death, bodily injury, or physical or mental impairment." TEX. PENAL CODE ANN. § 22.041(c) (West 2011). Thus, the language of the indictment essentially tracks the language of the applicable statute, adding the manner and means by which Meza allegedly placed her child in imminent danger of bodily injury, which included consumption of a drug and alcohol. The consumption of a drug or alcohol is not "criminalized." Rather, placing a child younger than fifteen in imminent bodily danger is the criminal act-not merely consuming drugs or alcohol. Cf. McCay v. State , 476 S.W.3d 640, 646-47 (Tex. App.-Dallas 2015, pet. ref'd), cert denied , --- U.S. ----, 137 S.Ct. 154, 196 L.Ed.2d 117 (2016).
In McCay , the appellant was convicted of attempted theft of property by causing the decedent to execute a will naming appellant as beneficiary and filing said will for probate when another person had a greater right to possession of the property. Id. at 642. On appeal, he alleged, among other things, the indictment criminalized the filing of a will contest, a legal activity. Id. at 646. On review, the Fifth Court of Appeals disagreed, holding the only will contests that are criminalized are those in which a will proponent knowingly submits a will for probate with the specific intent to steal an estate from another with the legal right to inherit. Id. at 647. The court held that a good faith contest between two wills does not amount to theft and could not be prosecuted as one. Id. We find McCay analogous.
Under the child endangerment statute and the indictment in this case, the consumption of a drug and alcohol is only "criminalized" if such consumption results in a child being placed in imminent danger of bodily injury. See id. Mere consumption of a drug or alcohol is not an offense for purposes of the child endangerment statute and could not be prosecuted as one-the consumption of a drug or alcohol is merely the means by which the offense *681 was allegedly committed and in this case only becomes criminal if the child is placed in imminent danger of bodily injury as a result. See id. Accordingly, we hold the indictment did not criminalize the mere consumption of a drug or alcohol.
2. Adequate Notice
Meza next contends the indictment failed to provide adequate notice, arguing it was vague and overly broad, failing to advise her of the conduct she had to defend against. Specifically, she contends the indictment was vague because it failed to: (1) allege "what constituted the 'imminent danger[;]' " or (2) sufficiently describe the manner and means by which the endangerment occurred-"leaving a child unsupervised in a parking lot" and "consuming a drug or alcohol."
A criminal defendant is guaranteed the right to fair notice of the specific offense charged. Zuniga , 512 S.W.3d at 906 ; State v. Barbernell , 257 S.W.3d 248, 250 (Tex. Crim. App. 2008) ; see U.S. CONST. amend. VI ; TEX. CONST. art. I, § 10 ; TEX. CONST. art. V, § 12b. The charging instrument must provide the defendant with sufficient notice to allow her to prepare a defense. Zuniga , 512 S.W.3d at 906 ; Barbernell , 257 S.W.3d at 250. Chapter 21 of the Texas Code of Criminal Procedure governs charging instruments, providing legislative guidance regarding the requirements and adequacy of notice. Zuniga , 512 S.W.3d at 906 (citing Moff , 154 S.W.3d at 601 ; Ferguson v. State , 622 S.W.2d 846, 849-50 (Tex. Crim. App. 1981) (op. on reh'g)).
With respect to indictments, Article 21.02 sets out what facts must be included in an indictment, stating, in pertinent part: "[t]he offense must be set forth in plain and intelligible words." TEX. CODE CRIM. PROC. ANN. art. 21.02(7) (West 2010). Article 21.03 goes on to state that "[e]verything should be stated in an indictment which is necessary to be proved." Id. art. 21.03. Finally, Article 21.04 advises that "[t]he certainty required in an indictment is such that will enable the accused to plead the judgment that may be given upon it in bar of any prosecution for the same offense." Id. art. 21.04. The Code of Criminal Procedure specifically sets out when an indictment is deemed sufficient:
An indictment shall be deemed sufficient which charges the commission of the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged, and enable the court, on conviction, to pronounce the proper judgment[.]
Id. art. 21.11.
Usually, a charging instrument that tracks the statutory text of an offense is sufficient to provide adequate notice. Zuniga , 512 S.W.3d at 907 ; Barbernell , 257 S.W.3d at 251. However, tracking the statutory language may be insufficient when it fails to be "completely descriptive." Zuniga , 512 S.W.3d at 907 ; Barbernell , 257 S.W.3d at 251. Statutory language is not completely descriptive when the statute defines a term so as to create several means of committing the offense, and the definition specifically concerns an act or omission by the defendant. Zuniga , 512 S.W.3d at 907 ; Barbernell , 257 S.W.3d at 251. If the statutory language is not completely descriptive, more particularity is required for purposes of notice to the defendant. Zuniga , 512 S.W.3d at 907 ; Barbernell , 257 S.W.3d at 251.
In Barbernell , the court of criminal appeals prescribed a two-step analysis for evaluating the adequacy of an indictment's allegations. "First, a court *682 must identify the elements of an offense." Barbernell , 257 S.W.3d at 255. The elements of an offense include: (1) forbidden conduct; (2) the required culpability, if any; (3) any required result; and (4) the negation of any exception to the charged offense. Id. Second, if an element of the offense describing an act or omission by the defendant has been defined by the Legislature, a court must ask whether the statute provides "alternative manners or means in which the act or omission can be committed." Id. If so, then the pleading "will supply adequate notice only if, in addition to setting out the elements of an offense, it also alleges the specific manner and means of commission that the State intends to rely on at trial." Id.
As charged in this case, the elements of child endangerment are: (1) engaging in conduct, by act or omission-the forbidden conduct; (2) intentionally, knowingly, or recklessly-the required culpability; and (3) that places a child under 15 years of age in imminent danger of bodily injury-the required result. See TEX. PENAL CODE ANN. § 22.041(c). Section 24.041(c) does not include the manner and means by which one commits child endangerment. See id. Additionally, the phrase "imminent danger" is not defined by the statute. See id. Moreover, the phrase is unrelated to, i.e., does not define, the manner or means by which the offense can be committed. Rather, it is merely the result of the forbidden conduct. See id. Because "imminent danger" is not a manner or means of committing the offense and does not describe, concern, involve, or go to the prohibited act, the indictment did not have to define it. See Jarreau , 512 S.W.3d at 356 (citing Barbernell , 257 S.W.3d at 255 ). Accordingly, Meza's complaint regarding a failure to allege or define what constituted the "imminent danger" is without merit.
"Leaving a child unsupervised in a parking lot" and "consuming a drug or alcohol" are not elements of the offense; rather, they are merely the manner and means alleged by the State in this case to provide notice of the specific acts or omissions committed by Meza that placed her child in imminent danger of bodily injury.[5] Thus, these phrases merely had to provide Meza with sufficient notice to prepare a defense. See Zuniga , 512 S.W.3d at 909. Pursuant to Articles 21.02(7) and 21.11, language in an indictment need only "be set forth in plain and intelligible words" that "enable a person of common understanding to know what is meant." TEX. CODE CRIM. PROC. ANN. arts. 21.02(7), 21.11. We hold these phrases, coupled with the language in the indictment tracking the statute, are sufficiently specific to allow Meza to prepare a defense to child endangerment-the charged offense. And, contrary to Meza's argument, it was not necessary for the State to allege a specific level of intoxication-intoxication was not the criminal conduct at issue; Meza was not tried for illegal intoxication and illegal intoxication is not required to sustain a conviction for child endangerment. See TEX. PENAL CODE ANN. § 22.041(c). Rather, the evidence of intoxication need only be such that a trier of fact could determine beyond a reasonable doubt that it placed a child in imminent danger of bodily injury. See id.
Meza relies on State v. Draper to support her contention that the phrase "consuming *683 a drug or alcohol" failed to provide the required notice. 940 S.W.2d 824 (Tex. App.-Austin 1997, no pet.). In Draper , the defendant was charged with injury to a child and child endangerment. Id. at 825. The indictment alleged she committed these offenses "by failing to remove [child] from a vehicle to be driven by GREG COOKE when she knew that GREG COOKE was a threat to the health and safety of the said [child], by virtue of the said GREG COOKE'S prior consumption of an alcoholic beverage[.]" Id. Draper moved to quash the indictment on numerous grounds, including her contention that the phrase "prior consumption of an alcoholic beverage" was vague and provided insufficient notice. Id. at 826. The trial court granted the motion to quash. Id. The State appealed. Id.
Using the now-rejected abuse of discretion standard, the court of appeals held the trial court, in its discretion, could have concluded the indictment was insufficient because it was unclear precisely what Draper was supposed to have known at the time she failed to remove the child from Cooke's vehicle, which could have been crucial to her defense. Id. Was the State attempting to convict Draper based on her knowledge of Cooke's alcohol consumption immediately prior to his driving the child or based on her general knowledge of Cook's consumption of alcohol before the day of the offense? Id. at 826-27. Moreover, the court of appeals concluded that even if the indictment meant immediately before driving, the trial court, in its discretion, could have concluded it was unclear whether "an alcoholic beverage" referred to one drink, one type of alcoholic beverage, or an indefinite number of drinks or any type of alcoholic beverage. Id. at 827. The appellate court concluded the trial court's decision to quash the indictment was within the zone of reasonable disagreement and therefore, did not constitute an abuse of discretion. Id.
We find Draper distinguishable. First, we now conduct our review using the de novo standard. See Zuniga , 512 S.W.3d at 906 ; Jarreau , 512 S.W.3d at 354. We are no longer required to uphold a trial court's ruling on a motion to quash as long as it is within the zone of reasonable disagreement. See Zuniga , 512 S.W.3d at 906 ; Jarreau , 512 S.W.3d at 354. As the State points out, under a de novo review, the Draper court may have found the indictment sufficient. Second, the indictment required Draper to know what Cooke drank, how much he drank, and when. Draper , 940 S.W.2d at 826-27. Here the indictment concerned Meza's own conduct-information within her own knowledge, giving her the means to know and understand the manner and means the State was relying on to prove child endangerment.
Accordingly, we hold the indictment provided sufficient notice with regard to the phrases complained of by Meza.
3. Election
Finally, Meza argues the trial court erred when it failed to require the State to elect the manner and means by which it intended to prove Meza endangered her child-consumption of alcohol or a drug-before trial began.[6] We disagree.
*684 An indictment may allege different methods of committing a single offense. Magana v. State , 351 S.W.3d 501, 505 (Tex. App.-San Antonio 2011, no pet.) (citing Kitchens v. State , 823 S.W.2d 256, 258 (Tex. Crim. App. 1991) ; Mata v. State , 75 S.W.3d 499, 501 (Tex. App.-San Antonio 2002), rev'd on other grounds , 122 S.W.3d 813 (Tex. Crim. App. 2003) ). In addition, the alternate means may be set out in the conjunctive, and the jury may be charged in the disjunctive. Vickers v. State , 467 S.W.3d 90, 96 n.8 (Tex. App.-Texarkana 2015, pet. ref'd) (citing Vasquez v. State , 665 S.W.2d 484, 486 (Tex. Crim. App. 1984), rev'd on other grounds , Gonzales v. State , 723 S.W.2d 746 (Tex. Crim. App. 1987) ). In other words, the State may allege and submit to the jury more than one theory of how a single offense is committed-alternate manner and means-as long as there is sufficient evidence to support each one, despite a motion to force the State to elect the manner and means. See Speer v. State , 890 S.W.2d 87, 94 (Tex. App.-Houston [1st Dist.] 1994, pet. ref'd) (citing Vasquez , 665 S.W.2d at 486-87 ; Richardson v. State , 766 S.W.2d 538, 541 (Tex. App.-Houston [14th Dist.] 1989, pet. ref'd) ).
Here, the indictment alleged Meza endangered her child-placed her in imminent danger of bodily injury "by consuming a drug and alcohol and leaving said child unsupervised in a parking lot[.]" Thus, the State alleged Meza committed a single offense-child endangerment-in one or more ways, which it was entitled to do. See Magana , 351 S.W.3d at 505. The State was not required to elect which manner it wanted submitted to the jury as long as there was evidence to support each one. See Speer , 890 S.W.2d at 94. It certainly was not required to make such an election before it had presented its evidence. See id. Accordingly, we hold the trial court did not err in refusing to require the State to elect the specific manner and means it intended to submit to the jury during the pretrial phase. See ids="9998019" index="50" url="https://cite.case.law/sw2d/890/87/#p94">id.
Admission of Officer Gourley's Testimony
Next, Meza contends the trial court erred in allowing Officer Gourley to testify that the HGN portion of the field sobriety tests showed nystagmus, indicating drug use by Meza. Meza argues the testimony should not have been admitted because there was no evidence of drug use, and the testimony was not based on personal knowledge, and was therefore speculative. See TEX. R. EVID. 602. She also contends that although the officer was qualified as a DRE, his expert testimony was inadmissible under Kelly v. State , 824 S.W.2d 568 (Tex. Crim. App. 1992) (en banc), because the HGN test was not properly conducted by Officer Newman.
Standard of Review
An appellate court reviews a trial court's ruling on the admission of evidence for an abuse of discretion. Tillman v. State , 354 S.W.3d 425, 435 (Tex. Crim. App. 2011) ;
*685 Oprean v. State , 201 S.W.3d 724, 726 (Tex. Crim. App. 2006). A trial court abuses its discretion if its decision is so clearly wrong as to lie outside the zone of reasonable disagreement. McDonald v. State , 179 S.W.3d 571, 576 (Tex. Crim. App. 2005) ; Lopez v. State , 314 S.W.3d 54, 61 (Tex. App.-San Antonio 2010, pet. ref'd). We must uphold the trial court's ruling if it was within the zone of reasonable disagreement. Casey v. State , 215 S.W.3d 870, 879 (Tex. Crim. App. 2007).
Application
1. Lack of Personal Knowledge
Meza first contends Officer Gourley lacked the personal knowledge necessary to testify that she was intoxicated based on drug consumption. Rule 602 of the Texas Rules of Evidence provides that a witness may testify to a matter only if sufficient evidence is introduced to establish the witness has personal knowledge of the matter. See TEX. R. EVID. 602. Personal knowledge may be proved by the witness's own testimony. See ids="8334234" index="57" url="https://cite.case.law/sw3d/215/870/#p879">id. As set out in detail above, Officer Gourley testified he and Officer Newman conducted a DWI investigation and described the three standardized field sobriety tests, which included the HGN test. He testified there would be an "involuntary jerking" of Meza's eyes if she was intoxicated due to consumption of alcohol or CNS depressants, i.e., certain drugs. Although Officer Gourley did not administer the HGN or other field sobriety tests himself, the tests were administered by Officer Newman under his supervision. Officer Gourley admitted he did not watch Meza's eyes the entire time Officer Newman was conducting the HGN test, but testified he personally saw nystagmus. On cross-examination he reiterated this, stating, "The nystagmus that was present would make me suspect" Meza had taken some sort of CNS depressing drug. Thus, contrary to Meza's contention, Officer Gourley had personal knowledge of intoxication based on the HGN test. Moreover, he testified Meza was asleep behind the wheel with the engine running and the lights on when officers arrived, her speech was slurred and confused, and she exhibited four intoxication clues during the walk-and-turn test-the minimum needed to suggest intoxication is two. Based on Meza's condition and results of all of the field sobriety tests, which he personally observed, and because the blood test results ultimately showed virtually no alcohol in Meza's system, Officer Gourley testified Meza was intoxicated and the intoxication was due to drug consumption. We hold this testimony was, contrary to Meza's assertion, based on his personal observations and knowledge. See ids="8334234" index="58" url="https://cite.case.law/sw3d/215/870/#p879">id. Accordingly, the trial court's decision to admit Officer Gourley's testimony was within the zone of reasonable disagreement and not an abuse of discretion. See Casey , 215 S.W.3d at 879.
2. Unreliable-Improper Application of HGN Test
Meza also contends that although Officer Gourley was a DRE expert, he could not render an expert opinion that she was intoxicated due to ingestion of a CNS depressing drug because his opinion was unreliable as it was not based on a "properly administered [HGN] test." See Coble v. State , 330 S.W.3d 253, 273 (Tex. Crim. App. 2010) (holding that to be considered reliable, evidence from scientific theory must satisfy three criteria: "(a) the underlying scientific theory must be valid; (b) the technique apply the theory must be valid; and (c) the technique must have been properly applied on the occasion in question.") (quoting Kelly , 824 S.W.2d at 573 ). Specifically, she asserts "Officer Gourley testified that Officer Newman did not properly administer the horizontal gaze nystagmus," and therefore, his testimony was unreliable and inadmissible under *686 Kelly and its progeny. Because Meza's assertion that Officer Gourley admitted Officer Newman failed to properly administer the HGN test is unsupported by the record, we overrule this issue.
We begin by noting that Officer Gourley's testimony comprises approximately seventy-eight pages in the reporter's record. Yet, Meza fails to provide any citation to the record to support her contention regarding Officer Gourley's alleged statement regarding Officer Newman's administration of the HGN test. Thus, we could consider this issue waived. See, e.g., Segundo v. State , 270 S.W.3d 79, 106 (Tex. Crim. App. 2008) (holding it is not appellate court's responsibility to wade through voluminous records in search of support for appellant's contention); Alvarado v. State , 912 S.W.2d 199, 210 (Tex. Crim. App. 1995) (holding that "As an appellate court, it is not our task to pore through hundreds of pages of record in an attempt to verify an appellant's claims."). Nevertheless, we have reviewed the officer's testimony and conclude Meza mischaracterized it.
During cross-examination, Meza's trial counsel questioned Officer Gourley about Officer Newman's administration of the HGN test. She asked him, with regard to the "smooth pursuit" clue how quickly the officer should move the stimulus. Officer Gourley stated the stimulus should move all the way out in "approximately two seconds." Trial counsel asked what would happen if the stimulus were moved more slowly. Officer Gourley stated the intoxication clue would be seen sooner. Meza's trial counsel did not ask what Officer Gourley meant by this. With regard to Officer Newman's movement of the stimulus, Officer Gourley stated she moved it "very slow," probably more than two seconds, but admitted he did not count. Moreover, as the officer stated, the two-second standard was an approximation. Meza's trial counsel then questioned him about the other HGN testing requirements, asking whether Officer Newman complied with the proper techniques; Officer Gourley never testified Officer Newman's administration of any portion of the HGN test was improper-he either could not recall certain specifics or testified to his belief that she properly administered the test.
Based on our review of Officer Gourley's testimony, we conclude the record does not support Meza's contention that Officer Gourley testified that Officer Newman failed to properly administer the HGN portion of the field sobriety tests. Thus, we hold the trial court did not abuse its discretion in admitting Officer Gourley's testimony as its decision was within the zone of reasonable disagreement. See Casey , 215 S.W.3d at 879.
Legal Sufficiency
In her final issue, Meza contends the evidence is legally insufficient to support her conviction. Specifically, she contends the evidence is insufficient to establish the child was in imminent danger of bodily injury; rather, the evidence showed, at best, a potential for bodily injury.
Standard of Review
In conducting a legal sufficiency review, we examine all of the evidence in the light most favorable to the verdict to determine whether, based on that evidence and reasonable inferences therefrom, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. Cary v. State , 507 S.W.3d 761, 766 (Tex. Crim. App. 2016) (citing Jackson , 443 U.S. at 319, 99 S.Ct. 2781 ); Marshall v. State , 479 S.W.3d 840, 845 (Tex. Crim. App. 2016). Under this standard, we must defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses'
*687 credibility and the weight to be afforded their testimony. Cary v. State , 507 S.W.3d 750, 757 (Tex.Crim.App.2016) ; Brooks , 323 S.W.3d at 899. Moreover, we must assume the jury resolved any apparent inconsistencies in testimony in order to render its verdict, and we defer to its resolution. Cary , 507 S.W.3d at 757 ; Isassi v State , 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). The jury can choose to believe some, all, or none of the testimony provided by any witness, and give different weight to different testimony if it so chooses. Baez v. State , 486 S.W.3d 592, 594 (Tex. App.-San Antonio 2016, pet. ref'd) (citing Chambers v. State , 805 S.W.2d 459, 461 (Tex. Crim. App. 1991) ).
Application
The Texas Penal Code defines "bodily injury" as "physical pain, illness, or any impairment of physical condition." TEX. PENAL CODE ANN. § 1.07(a)(8) (West 2011). The jury was provided with this definition in the charge. "Imminent danger," however, as previously noted, is not defined by the Texas Penal Code. When an appellate court analyzes the sufficiency of the evidence, undefined statutory terms, which do not possess a technical meaning, "are to be understood as ordinary usage allows, and jurors may thus freely read statutory language to have any meaning which is acceptable in common parlance." Clinton v. State , 354 S.W.3d 795, 800 (Tex. Crim. App. 2011) (quoting Vernon v. State , 841 S.W.2d 407, 409 (Tex. Crim. App. 1992) ). The common meaning of "imminent" is "impending, soon to happen," or "ready to take place." Imminent , SHORTER OXFORD ENGLISH DICTIONARY (6th ed. 2007); Imminent , WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1990). The Texas Court of Criminal Appeals has defined "imminent" to mean "ready to take place, near at hand, impending, hanging threateningly over one's head, menacingly near." Garcia v. State , 367 S.W.3d 683, 689 (Tex. Crim. App. 2012) (quoting Devine v. State , 786 S.W.2d 268, 270 (Tex. Crim. App. 1989) ; Millslagle v. State , 81 S.W.3d 895, 898 (Tex. App.-Austin 2002, pet. ref'd) ). "Danger" is commonly understood to mean "liability or exposure to harm or injury; risk, peril" or "exposure or liability to injury, pain, harm, or loss." Danger , SHORTER OXFORD ENGLISH DICTIONARY ; Danger , WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY .
The jury heard the following evidence regarding whether the child was in imminent danger of bodily injury based on Meza's conduct, i.e., consumption of a drug and alcohol, and leaving the child unsupervised in the parking lot. Meza was discovered by police-asleep or passed out-in her vehicle. Officer Gourley testified, based on the field sobriety tests, his observations, and the subsequent blood analysis, that Meza had consumed a CNS depressing drug. Moreover, there was an open bottle of wine in the vehicle. Falling asleep or passing out due to drug consumption in a running vehicle when you are responsible for a four-year-old child, who by Meza's own admission is autistic and has a tendency to "escape," could certainly be determined to be reckless by a trier of fact.
As detailed above, witnesses testified the child was running around the parking lot and the building unsupervised. The parking lot was littered with debris, including broken glass. Thus, there was evidence from which the jury could have concluded that at any moment the child, who was barefoot, could have stepped on the broken glass, suffering pain and injury as a result. Moreover, the child was seen climbing on the third floor balcony of the hotel, which could have also resulted in injury if she had fallen. Mr. Gonzalez stated he feared the child would fall.
*688 Mr. Gonzalez, who is a hotel employee, also testified he feared someone would rape the child. His fears were not unjustified given Officer Alvarez's testimony that the InTown Suites was in an area subject to numerous police calls for assaults, vehicle thefts, shootings, prostitution, rapes, and drug activity. He specifically stated he had responded to calls at the hotel for disturbances by the homeless, drug activity, family violence, assaults, burglaries, thefts, and stolen vehicles. The jury could have reasonably concluded that an unsupervised child in this area was subject to impending peril.
Additionally, the State presented evidence, including the officers' dash camera videos, which showed vehicles entering and leaving the parking lot. Moreover, the evidence established the hotel was located on a very busy street. Given the vehicles coming in and out of the parking lot and the proximate street traffic, it was not unreasonable for the jury to conclude the child, who was completely unsupervised at night, was in imminent danger of being struck or run over, i.e., in imminent danger of bodily injury.
Based on the foregoing evidence, the jury could have reasonably concluded the potential for harm to the child was not hypothetical, as Meza suggests, but real and impending, i.e., "ready to take place, near at hand, impending, hanging threateningly over one's head, menacingly near." Garcia , 367 S.W.3d at 689. Accordingly, we overrule Meza's legal sufficiency challenge and hold the evidence is legally sufficient to support the jury's finding that Meza's acts and omissions placed her child in imminent danger of bodily injury.
CONCLUSION
We hold the trial court did not err in denying the motion to quash or in admitting Officer Gourley's testimony, and we further hold the evidence is legally sufficient to support a finding of imminent danger of bodily injury to the child based on Meza's acts and omissions. We therefore affirm the trial court's judgment.

With regard to her third issue, Meza claims the evidence is legally and factually insufficient to sustain her conviction. The Texas Court of Criminal Appeals abolished factual sufficiency review in 2010. Howard v. State , 333 S.W.3d 137, 138 n.2 (Tex. Crim. App. 2011) (citing Brooks v. State , 323 S.W.3d 893, 894-95 (Tex. Crim. App. 2010) ); Mayberry v. State , 351 S.W.3d 507, 509 (Tex. App.-San Antonio 2011, pet. ref'd). The legal sufficiency standard established by the Supreme Court in Jackson v. Virginia is the only standard an appellate court uses in determining whether the evidence is sufficient to support the conviction. Brooks , 323 S.W.3d at 895 (citing Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ). Accordingly, we will review Meza's sufficiency challenge as a challenge to the legal sufficiency of the evidence. See Mayberry , 351 S.W.3d at 509.

Officer Newman's first name is never mentioned in the record.

Officer Newman, a recent graduate of the police academy, was a probationary officer and Officer Gourley was her field training officer. As her field training officer, he stated he is "with her the whole time ... to point out anything that she may have been doing incorrectly or let her know any tips [he] could give her."

Under article 21.15 of the Code of Criminal Procedure, whenever it is alleged the defendant acted recklessly, as here, or with criminal negligence in the commission of an offense, the charging instrument must allege with reasonable certainty, the act or acts relied on by the State to constitute recklessness or criminal negligence. See Tex. Code Crim. Proc. Ann. art. 21.15.

Meza begins her argument by seemingly raising a separate issue. She asserts that "prior to presenting the Motion to Quash to the court for it's [sic] consideration, the State informed the Defense that they [sic] did not intend to present evidence of drugs." She argues the trial court erred in failing to require the State to strike "a manner and means that was asserted in the indictment" that it had abandoned. First, Meza does not provide a record citation for her claim that the State informed Meza that it did not intend to present evidence of drug consumption by Meza. Moreover, our search of the pretrial hearing on the motion to quash does not show such intent by the State. In fact, during the hearing, the State argued the standard field sobriety test is designed to determine whether a person has lost the normal use of their mental or physical faculties through either alcohol use or the use of a drug that depresses the central nervous system. The State went on to argue the admission of the test results are relevant to whether Meza engaged in conduct that placed her child in imminent danger of bodily injury. Moreover, at trial, the State presented evidence of possible drug consumption by Meza based on the field sobriety tests. This belies Meza's contention that the State did not intend to present evidence that Meza consumed drugs-one of the manner and means alleged in the indictment.