COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| KRISTOPHER BLACK, | § | No. 08-19-00259-CR |
| Appellant, | | |
| | § | Appeal from the |
| v. | | |
| | § | 390th District Court |
| THE STATE OF TEXAS, | | |
| | § | of Travis County, Texas |
| Appellee. | | |
| | | (TC# D-1-DC-18-206551) |

## **O P I N I O N**

Kristopher Black appeals from his conviction for aggravated assault with a deadly weapon.[1] He asserts that the trial court erred by denying his motion to quash the indictment and by admitting evidence of prior extraneous offenses in the guilt-innocence phase of his trial. We affirm.

## **BACKGROUND**

On September 22, 2018, Black, carrying fishing poles, a tackle box, and a backpack, entered a Hooters restaurant in Austin, Texas, and told the hostess that he was there to "see ass." After the hostess became uncomfortable when Black repeated the comment, she left the hostess station to get the restaurant manager. When the manager, Zachary Valenzuela, told Black to get out of the restaurant, Black began yelling and quoting Bible verses, and refused to leave.

---

[1] As this case was transferred from our sister court in Austin, we decide it in accordance with the precedent of that court. TEX. R. APP. P. 41.3.

Valenzuela was firm with Black, who had become "really mad," but did not threaten him or rough him up.

Valenzuela escorted Black out of the restaurant by placing his hands on his back, moving him in the direction of the front door, until he was out the door. When Black attempted to reenter the restaurant, Valenzuela told his staff to call the police. As it happened, a uniformed police officer, Ryan Herring, was dining in the restaurant at the time and was alerted to the situation by the restaurant staff. In the meantime, Valenzuela had gotten Black outside and down the restaurant steps to the parking lot. Valenzuela assumed that Black would keep going but, instead, Valenzuela saw Black flick out his arm, opening a knife he held in his hand. Black came back in Valenzuela's direction, flinging his arm out and waving the knife around. Black was yelling, although Valenzuela did not know what he was saying, and Valenzuela felt threatened and feared for his life.

At this point, Officer Herring arrived on the scene with his gun drawn and ordered Black to drop the knife. Black put the knife away and dropped to his knees, with his hands up. Because Black was compliant, Officer Herring put his gun away and took out his Taser instead. Backup officers soon arrived and arrested Black. Black resisted being put in the patrol car and, once inside, engaged in a cycle of calm behavior followed by screaming and banging his head.

Officer Herring testified that Valenzuela did not appear to be aggressive during the encounter, but Black did. Officer Jody Fiala, who arrested and transported Black for booking, also testified that Black was highly aggressive, disruptive, and uncooperative. Officer Fiala described Black's knife as a large, folding lock-blade. Both officers testified that the knife was a deadly weapon.

2

Black testified in his own defense. He described having consumed a number of beers before arriving at Hooters, and further stated that he went to the restaurant to get something to eat "[t]o reduce the alcohol effects" on him. He conceded that it was possible that he had made the inappropriate remark to the hostess, yet believed she left the hostess station to get him a menu or to have him seated. He was surprised when the manager approached him instead. Black testified that Valenzuela told him to go eat at Whataburger, that Valenzuela couldn't stand him, and that Black should meet Valenzuela at a blue car in the parking lot. Valenzuela denied making any of these comments.

Black stated that he became afraid because there was an individual in the blue car whom he did not know and because Valenzuela kept pursuing him. Black testified that he "whipped out [his] knife in fear" to get Valenzuela to "back off." Black also admitted that he had previously had "quite a bit" of trouble with the law.

On cross-examination, the State was permitted to inquire, over Black's objection, about five prior assault convictions. For each prior conviction, Black was asked only whether it was true that he had been convicted of the offense. For one conviction, Black answered, "yes"; for the second, he answered that it was possible; for the third, he answered that it "could be"; and for the fourth and fifth, he answered "yes," but that even though there were two convictions, he only assaulted one person. On redirect, Black's own counsel asked him whether he had contested any of the prior charges against him. Black answered that he had not; he pleaded "no contest" to each.

The jury returned a verdict of guilty as charged in the indictment, and the court sentenced Black to four years' confinement. This appeal followed.

## DISCUSSION

3

In his first issue on appeal, Black contends that the trial court erred by denying his motion to quash the indictment on the ground that it did not provide him sufficient notice of the offense with which he was charged. In his second issue, Black contends that the trial court erred by allowing the State to introduce evidence of five prior misdemeanor assault convictions during the guilt-innocence phase of trial.

## A. Standards of Review

### 1) Sufficiency of the indictment

The sufficiency of an indictment presents a question of law, which is reviewed *de novo*. *State v. Drummond*, 501 S.W.3d 78, 81 (Tex. Crim. App. 2016); *State v. Zuniga*, 512 S.W.3d 902, 906 (Tex. Crim. App. 2017).

### 2) Admissibility of extraneous offense evidence

A trial court's ruling on the admissibility of evidence of extraneous offenses is reviewed for abuse of discretion. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). Under that standard, the court's ruling will be upheld as long as it is within the "zone of reasonable disagreement . . . ." *Id.* at 343-44. "A trial court's ruling is generally within this zone if the evidence shows that 1) an extraneous transaction is relevant to a material, non-propensity issue, and 2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury." *Id.* at 344. In addition, the trial court's ruling will be upheld if it is correct on any theory of law applicable to that ruling. *Id.*

## B. Issue One - Sufficiency of the indictment

In his first issue, Black contends the trial court committed reversible error in denying his motion to quash the indictment. He contends the indictment failed to allege sufficient facts to

properly give notice of the conduct supporting the offense charged. In asserting the indictment lacked an explanation of how a threat was conducted, Black contends the State's theory of the alleged fault was unclear such that it led to confusion and hampered his ability to prepare for trial.

The Texas Code of Criminal Procedure provides guidance on what must be included in a criminal indictment. For instance, "[e]verything should be stated in an indictment which is necessary to be proved." TEX. CODE CRIM. PROC. ANN. art. 21.03. Further,

> [a]n indictment shall be deemed sufficient which charges the commission of the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged, and enable the court, on conviction, to pronounce the proper judgment . . . .

TEX. CODE CRIM. PROC. ANN. art. 21.11.

As a general rule, an indictment that tracks the language of the applicable statute satisfies constitutional and statutory requirements. *Hughitt v. State*, 583 S.W.3d 623, 626 (Tex. Crim. App. 2019); *Curry v. State*, 30 S.W.3d 394, 398 (Tex. Crim. App. 2000). But when a defendant files a motion to quash, an indictment must allege on its face the facts necessary to give the defendant notice of precisely what he is charged with. *DeVaughn v. State*, 749 S.W.2d 62, 67 (Tex. Crim. App. 1988) (en banc). In other words, "[t]he charging instrument must convey sufficient notice to allow the accused to prepare a defense." *Curry*, 30 S.W.3d at 398. The State is not required, though, to plead facts that are merely evidentiary. *Curry*, 30 S.W.3d at 398; *DeVaughn*, 749 S.W.2d at 67.

As the Court of Criminal Appeals has explained,

> [A]n indictment or information which tracks the language of the statute which defines the act constituting the offense is sufficient to convey adequate notice to an accused only where the language of the statute is itself completely descriptive of the offense. In cases where the statutory language is not completely descriptive of

5

the offense, then additional specificity will be required in the face of a timely motion to quash.

*DeVaughn*, 749 S.W.2d at 69; *see Curry*, 30 S.W.3d at 398. "For example, when a statute defines the manner or means of commission in several alternative ways, an indictment will fail for lack of specificity if it neglects to identify which of the statutory means it addresses." *Curry*, 30 S.W.3d at 398.

A court evaluating the adequacy of an indictment's allegations to give notice employs a two-step analysis. *State v. Jarreau*, 512 S.W.3d 352, 354 (Tex. Crim. App. 2017); *State v. Barbernell*, 257 S.W.3d 248, 255 (Tex. Crim. App. 2008). The court must first identify the elements of the offense. *Jarreau*, 512 S.W.3d at 354; *Barbernell*, 257 S.W.3d at 255. "Next, it must consider whether the statutory language is sufficiently descriptive of the charged offense." *Zuniga*, 512 S.W.3d at 907; *see Jarreau*, 512 S.W.3d at 355.

Concerning the second prong of the analysis, "if an element of the offense describing an act or omission by the defendant has been defined by the Legislature, a court must ask whether the statute provides 'alternative manners or means in which the act or omission can be committed.'" *Jarreau*, 512 S.W.3d at 354-55. If it does, then the indictment supplies adequate notice "only if, in addition to setting out the elements of an offense, it also alleges the specific manner and means of commission that the State intends to rely on at trial." *Id.* at 355; *see State v. Mays*, 967 S.W.2d 404, 407 (Tex. Crim. App. 1998) (en banc). Additional specificity may also be required if the statute uses an undefined term of indeterminate or variable meaning. *Zuniga*, 512 S.W.3d at 907; *Mays*, 967 S.W.2d at 407.

Black was charged with aggravated assault causing bodily injury. A person commits that offense if he commits an assault, as defined in section 22.01 of the Texas Penal Code, and "uses

6

or exhibits a deadly weapon during the commission of the assault." TEX. PENAL CODE ANN. § 22.02(a)(2). A person commits assault under section 22.01 if he "intentionally or knowingly threatens another with imminent bodily injury . . . ." TEX. PENAL CODE ANN. § 22.01(a)(2). The elements of the offense with which Black was charged are, therefore, (1) intentionally or knowingly (2) threatening another with imminent bodily injury, and (3) using or exhibiting a deadly weapon (4) during the commission of that assault.

The indictment here at issue charged that Black, "on or about the 22nd day of September, 2018, . . . did then and there [1] intentionally and knowingly [2] threaten Zachary Valenzuela with imminent bodily injury, and the Defendant did then and there [3] use and exhibit a deadly weapon, to-wit: a knife, [4] during the commission of the said assault . . . ." The indictment tracks the relevant statutory language and alleges each element of the offense of aggravated assault. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(2), 22.02(a)(2). It is therefore legally sufficient to charge that offense. *See Hughitt*, 583 S.W.3d at 626; *Curry*, 30 S.W.3d at 398. But Black contends that the indictment was inadequate to give him notice sufficient to prepare a defense because it fails to state the "manner and means" by which he threatened Valenzuela. *See Curry*, 30 S.W.3d at 398. We consider, then, whether the statutory language is sufficiently descriptive of the charged offense. *See Jarreau*, 512 S.W.3d at 355; *Zuniga*, 512 S.W.3d at 907.

The act here at issue is threatening another with imminent bodily injury. "Threat" is neither statutorily defined, nor does the statute specify alternative manners or means in which the act can be committed. *See Jarreau*, 512 S.W.3d at 354-55. Black asserts that the threat he is alleged to have made could have been accomplished in a variety of ways—verbally, physically, by use of a knife, or by some independent action or gesture. For this reason, he urges, he was entitled to

7

additional specificity concerning the manner and means by which he is alleged to have threatened Valenzuela. *See Zuniga*, 512 S.W.3d at 907; *Mays*, 967 S.W.2d at 407.

The court below relied on *Pacheco v. State*, 529 S.W.2d 77 (Tex. Crim. App. 1975), in concluding that the indictment gives sufficient notice. That case concerned a challenge to an indictment that alleged that the defendant "[d]id then and there use a pistol, a deadly weapon, to intentionally threaten imminent bodily injury to Ernest Riojas. . . ." *Id.* at 77. The Court of Criminal Appeals stated, "We perceive no material difference between alleging that one intentionally threatened another with imminent bodily injury by using a pistol and alleging that one used a pistol to intentionally threaten another with imminent bodily injury. Each is sufficient to allege aggravated assault with a deadly weapon . . . ." *Id.* There is no indication in *Pacheco*, however, that the defendant filed a motion to quash asserting failure of the indictment to provide sufficient notice. On the contrary, it appears that the question before the court was the legal sufficiency of the indictment to allege an offense, which is distinct from the issue of adequate notice. *See Garcia v. State*, 981 S.W.2d 683, 685 (Tex. Crim. App. 1998) (en banc) (statutory requirement of certainty in an indictment is distinct from, and independent of, constitutional requirement of adequate notice). *Pacheco* therefore does not govern the analysis in this case.

Black asserts that the State was required to more specifically allege facts showing the manner and means by which he threatened Valenzuela because using or exhibiting a knife is not an inherently criminal act. As the Court of Criminal Appeals has stated, "[a]lthough it is generally sufficient to allege an offense in the terms of the statute without alleging additional facts, if it is the manner and means by which an act is done that makes the otherwise innocent act a criminal offense, it is necessary to allege facts showing the manner and means which make the act a criminal

8

offense." *Posey v. State*, 545 S.W.2d 162, 163 (Tex. Crim. App. 1977).

Black argues that the indictment alleges only that he used and exhibited a knife *during* the commission of an assault, not that he used and exhibited a knife *to commit* the assault. He urges that it is not a criminal act to merely use or exhibit a knife, and that it is the context and circumstances surrounding the use or exhibition that may make it a criminal act. He concludes that, because the indictment against him only alleges use and exhibition of a knife, it alleges only a non-criminal act. After concluding that Black reads the indictment too narrowly, we disagree. The allegation that he used and exhibited a knife during the commission of an assault adequately provides the context and circumstances of that use and exhibition, and thus adequately alleges that the use and exhibition was a criminal act. *Cf. Posey*, 545 S.W.2d at 163-64 (presenting to a pharmacist a prescription for a controlled substance purporting to be prescribed for a third person does not allege a criminal act because it is not an offense to pick up a prescription for a friend or family member).

Black also relies heavily on *Doyle v. State*, 661 S.W.2d 726 (Tex. Crim. App. 1983) (en banc), to support his contention that the State was required to more specifically allege the manner and means by which he threatened Valenzuela. In *Doyle*, retaliation was the offense at issue, which is defined as "intentionally or knowingly harm[ing] or threaten[ing] to harm another by an unlawful act in retaliation for or on account of the service of another as a public servant, witness or informant." *Id.* at 729 (quoting TEX. PENAL CODE ANN. § 36.06(a)). The indictment in *Doyle* alleged that the defendant:

> [I]ntentionally and knowingly threaten[ed] to harm another person, namely: Dan Gibbs, by an unlawful act in retaliation for and on account of the service of the said Dan Gibbs as a public servant, in that the said defendant threatened to kill the said

9

Dan Gibbs on account of the services of the said Dan Gibbs as a judge in a prior lawsuit in which the defendant was a party.

*Id.*

The Court of Criminal Appeals noted that the indictment did not specify the manner or means by which the offense was committed, and that the alleged threat "could have been conveyed in a number of ways, including: face to face in person, over the phone directly, through a third party, or through the mail." *Id.* at 730. As it turned out, the threat was made, not to Dan Gibbs, but to a police officer. *Id.* The court further noted that the State could not have proved the alleged threat without describing how and to whom it was made, which required testimony by the police officer. *Id.* The court concluded that the defendant was entitled to more specific notice of the offense he was alleged to have committed and, therefore, the trial court erred by overruling his motion to quash. *Id.* at 731.

We find *Doyle* to be distinguishable. The indictment there did not give the defendant any indication whatsoever how he was alleged to have threatened the victim.[2] The indictment in the present case, however, read logically and as a whole, alleges that Black used and exhibited a knife in a manner that threatened imminent bodily injury to the victim. It thus sufficiently conveys how and to whom the threat was made.

The circumstances presented in *Hare v. State*, 713 S.W.2d 396 (Tex. App.—El Paso 1986, pet. ref'd), closely resemble the circumstances of the case before us. The indictment in *Hare* alleged that the defendant "intentionally and knowingly threaten[ed] Larry Jackson with imminent

---

[2] Other cases on which Black relies are similarly distinguishable. *See*, *e.g.*, *Cruise v. State*, 587 S.W.2d 403, 404 (Tex. Crim. App. 1979) (indictment gave no indication of how defendant caused bodily injury to victim); *Miller v. State*, 647 S.W.2d 266, 267 (Tex. Crim. App. 1983) (en banc) (indictment gave no indication of how defendant damaged and destroyed an automobile); *Castillo v. State*, 689 S.W.2d 443, 449 (Tex. Crim. App. 1984) (en banc) (indictment gave no indication of how defendant started a fire).

10

bodily injury and did then and there use a deadly weapon, to-wit; a 1984 Chrysler automobile that in the manner of its use and intended use was capable of causing death and serious bodily injury . . . ." *Id.* at 398. The defendant argued that the indictment "fail[ed] to adequately allege the manner and means by which the crime was committed, specifically with regard to the word 'threaten' and the specific acts performed with the alleged vehicle." *Id.*

This Court found that an automobile "is not susceptible to widely varied manners of use in an intentionally assaultive manner such as to preclude preparation of a defense. The only common sense meaning of the indictment is that the vehicle was intentionally or knowingly driven in an assaultive manner threatening imminent serious bodily injury or death to the complainant." *Id.*; *see St. Clair v. State*, 26 S.W.3d 89, 95 (Tex. App.—Waco 2000, pet. ref'd) (adopting reasoning of *Hare*). The Court concluded that the indictment was sufficient to give notice of the offense charged. *Hare*, 713 S.W.2d at 398.

Generally, the use of an automobile is an innocent act. But the allegation that an automobile was used in the context of threatening another with imminent bodily injury was sufficient to allege that the manner of its use was criminal. *See id.* Similarly, even accepting that the use or exhibition of a knife is generally an innocent act, the allegation that Black used and exhibited a knife in the context of committing an assault by threatening imminent bodily injury to Valenzuela is sufficient to allege that the manner of its use was criminal.

This leads to the further conclusion that the State was not required to allege, more specifically, the manner and means by which Black is alleged to have threatened Valenzuela. While a threat, in the abstract, may be conveyed in a variety of ways, the indictment here did not simply allege, without context, that Black threatened Valenzuela. The indictment—when read as

11

a whole—demonstrates that the manner and means by which the threat was conveyed was accomplished by the use and exhibition of a knife. To require the State to specifically allege how the knife was used in communicating the threat (*e.g.*, by making a slashing, waving, or thrusting motion, or by simply displaying the knife) would improperly require it to allege facts that are merely evidentiary. *Curry*, 30 S.W.3d at 398; *DeVaughn*, 749 S.W.2d at 67. This we may not do.

We conclude that the indictment gave Black notice of the charged offense sufficient to have permitted him to prepare his defense.

Issue One is overruled.

## C. Issue Two - Evidence of prior convictions

In his second issue, Black contends the trial court committed reversible error in allowing the State to introduce evidence of five prior extraneous offenses in violation of Texas Rules of Evidence 404(b) and 403. Responding, the State contends the challenged evidence was admissible under Texas Rule of Evidence 107; and, in any event, any error by the trial court in admitting the evidence was harmless.

### 1) Underlying facts

Black testified on direct examination that he had previously had "quite a bit" of trouble with the law. At the conclusion of Black's testimony on direct, the State approached the bench and requested that it be allowed to present evidence of several prior convictions. The State argued that Black had opened the door to that evidence by raising the defensive theory of self-defense. The State urged that the prior convictions were thus admissible under evidence rule 404 to rebut that defensive theory. *See* TEX. R. EVID. 404(b).

The trial court ruled that the State would be permitted to introduce the fact of Black's five

12

prior assault convictions, finding that the probative value of that evidence outweighed its prejudicial effect. The court instructed the jury that it could consider the evidence of extraneous offenses only for purposes of "[m]otive, opportunity, intent, preparation, plan, knowledge, absence of mistake, or accident, and not to prove that the defendant acted in conformance therewith on the date of this alleged assault."[3]

The State then asked Black whether it was true that he had been convicted of each of the five prior assault charges. Black admitted that he had[4] and the convictions were not mentioned again until redirect. At that point, Black's counsel asked Black whether he had contested the prior charges, and Black answered that he had not.

### 2) Admissibility under rule 404(b)

Rule 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." TEX. R. EVID. 404(b)(1). But such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b)(2).

Black argues that evidence of his prior convictions had no relevance apart from showing his propensity to commit assault. The State argued in the court below that the evidence was admissible to rebut the defensive theory of self-defense. The jury, however, was not instructed that it could consider the evidence for that purpose. This fact is fatal to the State's rebuttal theory of

---

[3] The jury charge contained a similar instruction.

[4] For one of the convictions, Black answered that it was "possible"; for another, he answered that "it could be" and that he was not going to contend with the prosecutor.

admissibility:

> The Texas Court of Criminal Appeals has held that an appellate court cannot affirm a trial court's decision to admit extraneous-offense evidence to rebut a defensive theory if the trial court failed to instruct the jury, in the trial court's limiting instruction, on the extraneous evidence admissibility to rebut a defensive theory.

*Jackson v. State*, 320 S.W.3d 873, 887 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Owens v. State*, 827 S.W.2d 911, 917 (Tex. Crim. App. 1992)); *see Curtis v. State*, 89 S.W.3d 163, 170-71 (Tex. App.—Fort Worth 2002, pet. ref'd). We therefore cannot uphold the trial court's evidentiary ruling on the basis that Black's prior convictions were admissible to rebut his defensive theory of self-defense.

We also note that, even if the jury had been instructed that it could consider evidence of Black's prior convictions to rebut his theory of self-defense, we could not conclude that it was properly admitted for that purpose. The case on which the State and the trial court relied states that, "[i]f the defendant claims self-defense, the State may rebut this claim by introducing evidence of other violent acts in which the defendant was the aggressor." *Wilson v. State*, No. 05-06-01558-CR, 2007 WL 4201087, at *4 (Tex. App.—Dallas Nov. 29, 2007, pet. ref'd) (mem. op., not designated for publication). But nothing in our record shows the facts or circumstances underlying any of Black's prior convictions. The mere fact that those convictions were for assault does not necessarily establish that Black was the aggressor in those cases, or otherwise rebut his claim of self-defense in the circumstances of this case. The evidence therefore lacks any probative value on the issue of Black's defensive theory and was inadmissible for the purpose of rebutting that theory.

The record does not demonstrate that evidence of Black's prior assault convictions was relevant to any proper purpose. Rather, its only relevance was to prove that, on the occasion in question, Black acted in conformity with an assaultive character. Thus, we conclude the evidence

14

was inadmissible under rule 404(b). *See* TEX. R. EVID. 404(b)(1) (prohibiting use of evidence of other crimes to prove defendant acted in conformity).

Nonetheless, the State does not argue on appeal that the decision to admit evidence of Black's prior convictions should be upheld based on rule 404. Rather, it argues that, regardless of whether it was admissible under rule 404, the evidence was admissible under evidence rule 107. That rule provides,

> If a party introduces part of an act, declaration, conversation, writing, or recorded statement, an adverse party may inquire into any other part on the same subject. An adverse party may also introduce any other act, declaration, conversation, writing, or recorded statement that is necessary to explain or allow the trier of fact to fully understand the part offered by the opponent. . . .

TEX. R. EVID. 107. While the State did not raise this theory of admissibility at trial, it points out that a trial court's evidentiary ruling will be upheld if it is correct on any theory of law applicable to that ruling. *De La Paz*, 279 S.W.3d at 344. Rule 107, however, is not applicable to the trial court's ruling admitting evidence of Black's prior assault convictions.

Rule 107, the rule of optional completeness, is an exception to the hearsay rule. *Walters v. State*, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007); *Whipple v. State*, 281 S.W.3d 482, 500 (Tex. App.—El Paso 2008, pet. ref'd).

> This rule is one of admissibility and permits the introduction of otherwise inadmissible evidence when that evidence is necessary to fully and fairly explain a matter "opened up" by the adverse party. It is designed to reduce the possibility of the jury receiving a false impression from hearing only a part of some act, conversation, or writing. Rule 107 does not permit the introduction of other similar, but inadmissible, evidence unless it is necessary to explain properly admitted evidence. Further, the rule is not invoked by the mere reference to a document, statement, or act.

*Walters*, 247 S.W.3d at 217–18 (footnotes omitted); *accord Whipple*, 281 S.W.3d at 500.

The properly admitted evidence in this case was Black's admission that he had previously

15

had "quite a bit" of trouble with the law. Black did not further describe or discuss that trouble. We cannot conclude that his bare admission of prior run-ins with the law left the jury with any false impression that required explanation. Indeed, we question whether it can properly be characterized as evidence of "part of an act." *See* TEX. R. EVID. 107. Rather, it was more in the nature of a "mere reference" to prior acts that does not invoke the rule of optional completeness. *See Walters*, 247 S.W.3d at 218; *Whipple*, 281 S.W.3d at 500.

Our conclusion might have been different if Black had attempted to minimize his prior criminal conduct or otherwise left the impression that he had committed only minor offenses or offenses completely unlike the one for which he was on trial. For example, the rule of optional completeness applied in *Arebalo v. State*, 143 S.W.3d 402 (Tex. App.—Austin 2004, pet. ref'd), because the defendant testified that he had seen someone get shot, but omitted the fact that he was the shooter. *Id.* at 407-408. In the present case, though, the jury was informed only of the fact that Black had previously had problems with the law. That fact was entirely true and left no false impression that required explanation. *See Walters*, 247 S.W.3d 204, 218 (evidence admissible under rule 107 only if necessary to explain properly admitted evidence); *Fuentes v. State*, 991 S.W.2d 267, 279 (Tex. Crim. App. 1999) (extraneous offense evidence admissible under rule 107 when there is a "necessity of completeness").

In sum, the trial court's decision to admit evidence of Black's prior convictions cannot be upheld under rule 107.

### 3) Exclusion under rule 403

Black additionally contends that the evidence of his prior assault convictions was inadmissible because its probative value was substantially outweighed by the danger of undue

prejudice. *See* TEX. R. EVID. 403. We need not address this contention because we have already determined that the evidence was not properly admitted under either rule 404(b) or rule 107.

### 4) Harm analysis

We must now consider whether the error in admitting evidence of Black's prior convictions was harmful. Because the error does not rise to the level of constitutional error, it will not result in reversal of the conviction if, "after examining the record as a whole, [this Court] has fair assurance that the error did not influence the jury, or had but a slight effect." *Bagheri v. State*, 119 S.W.3d 755, 763 (Tex. Crim. App. 2003); *see Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); TEX. R. APP. P. 44.2(b) ("Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.").

The record in this case contains testimony from two eyewitnesses, Officer Herring and Zachary Valenzuela, establishing that Black, while upset and yelling at Valenzuela, flung open a knife and threatened Valenzuela with it. Valenzuela testified that he felt threatened and feared for his life. Officer Herring testified that Valenzuela's reaction to Black pulling out the knife showed that he felt threatened. Officer Herring and a third witness, Officer Fiala, both testified that Black's behavior was aggressive.

Black admitted pulling a knife on Valenzuela but testified that he did so because he wanted to be left alone. He claimed he wanted Valenzuela to "back off." He also admitted that he was angry about being escorted out of the restaurant, and his own testimony indicates that he was intoxicated at the time. Finally, in testimony elicited by his own attorney, Black admitted that he had previously had "quite a bit" of trouble with the law. The evidence of his prior convictions merely identified five of the offenses that constituted that "quite a bit" of trouble. While the jury

17

was informed that those convictions were for assault, the evidence does not include any discussion of the details of those offenses and the State did not pursue the issue beyond establishing the fact of the convictions.

The record also reveals that the jury was instructed at the time the evidence of prior convictions was introduced that it could not consider that evidence to prove that Black "acted in conformance therewith on the date of this alleged assault." It was also instructed in the jury charge that Black was on trial solely on the charge contained in the indictment, and that the jury could consider evidence of other similar acts only "for the purposes of determining motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident, . . . and for no other purpose." Finally, while the State made reference to Black's prior convictions in its closing remarks to the jury, it did not emphasize those convictions and reiterated that the jury could use evidence of those convictions only for limited purposes.

After examining the record as a whole, we have fair assurance that admitting evidence of the mere fact of Black's prior convictions had but slight, if any, effect on the jury. *See Bagheri*, 119 S.W.3d at 763; *Johnson*, 967 S.W.2d at 417. We conclude that the error in admitting that evidence is harmless. *See* TEX. R. APP. P. 44.2(b).

Issue Two is overruled.

### D. Reformation of the judgment

We note that the trial court's judgment included in the clerk's record contains a clerical error. The judgment is titled, "Judgment of Conviction by Court—Waiver of Jury Trial," and, on its face, indicates that Black entered a plea of guilty to the offense of aggravated assault with a deadly weapon as charged by the indictment. Moreover, the judgment further states that, after both

18

parties announced ready for trial, "Defendant waived the right of trial by jury . . . ." Yet, the record before us makes it clear that Black was convicted by a jury following a jury trial. After a jury was empaneled and sworn in, the State read the indictment in open court and Black then pleaded not guilty to the offense charged. After two days of trial, the jury returned a unanimous verdict finding Black guilty of the offense charged, namely, aggravated assault with a deadly weapon. The jury was released as Black had elected for the court to assess punishment. Later, the trial court imposed a sentence of confinement in the Texas Department of Criminal Justice for four years in accordance with an agreement Black had reached with the State.

We have authority to reform the judgment of the court below to make the record speak the truth when we have the information necessary to do so. TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993). Appellate courts have the power to reform whatever the trial court could have corrected by a judgment *nunc pro tunc* where the evidence necessary to correct the judgment appears in the record. *Robinson v. State*, 568 S.W.3d 718 724-25 (Tex. App.—Amarillo 2019, no pet.).

## CONCLUSION

Having overruled Black's two issues on appeal, we reform the trial court's judgment to correct that he was convicted by a jury after entering a plea of not guilty and, as reformed, affirm the trial court's judgment.

GINA M. PALAFOX, Justice

September 15, 2020

Before Alley, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)

19