We refuse ground (1) of the State's petition for discretionary review with prejudice.

**The STATE of Texas**

v.

**James Burke JARREAU, Appellee**

**NO. PD–0840–16**

Court of Criminal Appeals of Texas.

Delivered: March 1, 2017

Mark Stevens, San Antonio, TX, for appellee.

Lisa McMinn, State Prosecuting Attorney, Stacey Soule, State's Attorney, Austin, TX, for the State.

## OPINION

Keel, J., delivered the opinion of the unanimous Court.

Appellee was charged with delivery of a dangerous drug under Texas Health and Safety Code Section 483.042(a). The trial court granted his motion to quash the indictment. The State appealed, and the court of appeals affirmed the order quashing the indictment. *State v. Jarreau*, No. 04-15-00313-CR, 2016 WL 3440481, 2016 Tex. App. LEXIS 6559 (Tex. App.–San Antonio June 22, 2016) (mem. op., not designated for publication). We granted the State Prosecuting Attorney's petition for discretionary review to consider whether a charging instrument alleging delivery of a named dangerous drug must also specify whether it is a device or drug. Concluding that it need not, we remand to the court of appeals for disposition of the State's remaining points of error.

## BACKGROUND

"A person commits an offense if the person delivers or offers to deliver a dangerous drug." TEX. HEALTH & SAFETY CODE § 483.042(a). A dangerous drug is "*a device or a drug* that is unsafe for self-medication" and is not included in Chapter 481's schedules or penalty groups. *Id.* at § 483.001(2) (emphasis added). It includes

a device or drug that bears a legend cautioning against dispensing without a prescription. *Id.* Delivery by pharmacists or health care practitioners under customary medical practices is not an offense. *Id.* at § 483.042(a).

The indictment in this case alleged that Appellee "did then and there intentionally or knowingly deliver or offer to deliver to [M.J.] a dangerous drug, specifically 25B–NBOMe." Appellee moved to quash the indictment because, among other things, it failed to allege which of the two statutory definitions of dangerous drug the State intended to rely upon, i.e., device or drug. The trial court granted the motion to quash the indictment on that and three other grounds,[1] and the State appealed.

The Fourth Court of Appeals held that the State had to specify which definition of "dangerous drug" it would rely upon at trial. *Jarreau,* 2016 WL 3440481, at *4–*5, 2016 Tex. App. LEXIS 6559 at *12–*15. The court held that the indictment "did not elect among the alternate statutory manner or means of committing the offense of deliver or offer to deliver a dangerous drug—by device or by drug that is unsafe for self-medication." *Id.* at *6–*7, 2016 Tex. App. LEXIS 6559 at *17–*18. The court further held that "including the descriptor '25B–NBOMe' does nothing to alleviate the notice deficiency." *Id.* at *6, 2016 Tex. App. LEXIS 6559 at *18.

## EVALUATING THE SUFFICIENCY OF AN INDICTMENT

An indictment is sufficient if it charges the commission of the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged, and enable the court, on conviction, to pronounce the proper judgment[.]

TEX. CODE CRIM. PROC. ART. 21.11.

■■■ An indictment that tracks the language of a statute usually gives sufficient notice. *State v. Mays,* 967 S.W.2d 404, 406–07 (Tex. Crim. App. 1998) (citing *Daniels v. State,* 754 S.W.2d 214, 218 (Tex. Crim. App. 1988)). But "this rule applies only where the [pleading] is framed under a statute which defines the act constituting the offense in a manner that will inform the accused of the nature of the charge." *Mays,* 967 S.W.2d at 406 (quoting *Haecker v. State,* 571 S.W.2d 920, 921 (Tex. Crim. App. 1978)(panel op.). "Generally, the State need not plead with additional specificity those matters which are statutorily defined in the alternative where the matter is not an act or omission of the defendant." *DeVaughn v. State,* 749 S.W.2d 62, 68 (Tex. Crim. App. 1988).

■■■ Appellate review of an order quashing an indictment is *de novo. State v. Moff,* 154 S.W.3d 599, 601 (Tex. Crim. App. 2004). The analysis is "contingent upon a variety of factors, including, but not limited to, the statutory description of the prohibited conduct and whether the notice deficiency complained of describes an act or omission by the accused." *DeVaughn,* 749 S.W.2d at 68.

■■■ *State v. Barbernell,* 257 S.W.3d 248 (Tex. Crim. App. 2008), prescribed a two-step analysis for evaluating the adequacy of an indictment's allegations. "First, a court must identify the elements of an offense." *Id.* at 255. Second, if an element

---

1. One of those other grounds was the failure to allege which statutorily-defined manner of delivery the State would seek to prove. The State conceded the need for that allegation and moved to amend the indictment to include it, but the trial court denied its motion.

of the offense describing an act or omission by the defendant has been defined by the Legislature, a court must ask whether the statute provides "alternative manners or means in which the act or omission can be committed." *Id.* If so, then the pleading "will supply adequate notice only if, in addition to setting out the elements of an offense, it also alleges the specific manner and means of commission that the State intends to rely on at trial." *Id.*

*Barbernell*, a case of driving while intoxicated, reasoned that the definitions of "intoxicated" did not "concern an act or omission and create two different manners and means of committing DWI." *Id.* at 256. Instead, the definitions of "intoxicated" were "purely evidentiary matters" and did not have to be alleged to give a defendant sufficient notice." *Id.*

## APPLICATION OF THE LAW TO THIS CASE

▉ Applying *Barbernell*'s framework here, the elements of delivery of a dangerous drug are (1) a person (2) delivers or offers to deliver (3) a dangerous drug. Tex. Health & Safety Code § 483.042(a). The act is "deliver or offer to deliver," and there are four statutory definitions of deliver: "sell, dispense, give away, or supply in any other manner." *Id.* at § 483.001(3). Thus, the State was required to specify which of the statutorily-defined methods of delivery it would seek to prove. The definitions of "dangerous drug," however, do not concern the act of "deliver or offer to deliver" and did not have to be specified in the indictment.

But the court of appeals implied that "dangerous drug" was itself an act or omission with two definitions, device or drug, that had to be specified. *Jarreau*, 2016 WL 3440481, at *4–5, 2016 Tex. App. LEXIS 6559 at *15. It relied on *Saathoff v. State*, 891 S.W.2d 264, 266 (Tex. Crim.

App. 1994) (per curiam), and *Olurebi v. State*, 870 S.W.2d 58 (Tex. Crim. App. 1994). *Jarreau*, 2016 WL 3440481, at *4–*5, 2016 Tex. App. LEXIS 6559 at *12–*14. Neither of those cases, however, supports the court's holding that the State failed to provide sufficient notice to inform Appellee of the specific act with which he was charged. *Id.* at *7, 2016 Tex. App. LEXIS 6559 at *20.

In *Saathoff*, this Court held that an indictment charging intoxication manslaughter had to allege which statutory definition of intoxication the State would rely on at trial because it was "part of the prohibited conduct that the State seeks to prove." *Saathoff*, 891 S.W.2d at 267. But *Saathoff* was based on *State v. Carter*, 810 S.W.2d 197 (Tex. Crim. App. 1991), which this Court disavowed in *Barbernell*. *Barbernell*, 257 S.W.3d at 255. *Saathoff*, therefore, has no precedential value on this point.

*Olurebi* is distinguishable from this case. *Olurebi* was prosecuted for credit card abuse by use of a "fictitious credit card," a phrase undefined by statute. This Court held that a credit card could be fictitious in two different ways and concluded that the indictment was deficient for not specifying which way the credit card was fictitious. *Olurebi*, 870 S.W.2d at 61–62. "[I]f 'the statutory language is not completely descriptive of the offense, then additional specificity will be required in the face of a timely motion to quash.'" *Id.* at 62 (quoting *DeVaughn*, 749 S.W.2d at 69). This case, however, does not involve a statutorily-undefined term or a statute that is not completely descriptive of the offense, so *Olurebi* is inapplicable.

The court of appeals erred in relying on *Saathoff* and *Olurebi* and instead should have followed *Barbernell*.

## APPELLEE'S ARGUMENTS

Relying on *Thomas v. State*, 621 S.W.2d 158 (Tex. Crim. App. 1980) (panel op.) (op.

on reh'g), and *Geter v. State*, 779 S.W.2d 403 (Tex. Crim. App. 1989), Appellee argues that the definition of dangerous drug must be pled because it "goes to" a defendant's act or omission. Neither case is persuasive.

*Thomas*, a prosecution for theft of hubcaps, held that the indictment did not need to specify a statutory definition of "owner" because such an allegation would not "go to giving him notice of his alleged act" or "go to an act or omission of the defendant." *Thomas*, 621 S.W.2d at 163–64. Similarly, an allegation here that the "dangerous drug" delivered by Appellee was a device or a drug would not "go to giving him notice" of his act or "go to" his act.

In *Geter*, a bank mistakenly credited the defendant with money from another customer's account. The indictment alleged that Geter appropriated the money without effective consent but did not specify how the consent was not effective. This Court held that the indictment was insufficient under the circumstances of that case since the lack of effective consent "involved" Geter's acts, that is, the defendant's acts negated consent. *Geter*, 779 S.W.2d at 407. In contrast, the nature of 25B–NBOMe as a device or drug does not depend on or involve Appellee's acts. Furthermore, *Geter* was expressly limited to its facts. "Our holding today is not intended to affect the notice requirements of other statutes or to stand as an endorsement of needless and potentially endless pleading of purely evidentiary matters." *Id.*

Appellee maintains that the statutory definitions of "device" and "drug" are mutually exclusive, and delivering a device is an "entirely different crime" than delivering a drug. The definitions he cites, however, are confined to Chapter 431 and do not apply to prosecutions involving dangerous drugs under Chapter 483. *Compare* Tex. Health & Safety Code § 431.002 (definitions in "this chapter") *with* Tex. Health & Safety Code § 483.001 (definitions in "this chapter"). Chapter 483 does not define "device" or "drug" at all. But even if it did, and even if it defined them as mutually exclusive, 25B–NBOMe's character as either would not describe,[2] concern,[3] involve,[4] or go to [5] Appellee's act of delivery and so would not have to be pled.

Appellee complains that, contrary to the State's assertion, the indictment against him did not allege a "named dangerous drug" because at the time of the indictment, 25B–NBOMe was not the name of anything found in the Texas Penal Code or the Texas Health & Safety Code. The point is that the indictment named it and thus gave him sufficient notice "to investigate the allegations against him and establish a defense." *Moff*, 154 S.W.3d at 602.

## CONCLUSION

The nature of 25B–NBOMe as a device or a drug is not a manner or means of delivery of a dangerous drug and does not describe, concern, involve or go to the act of delivery; thus, the charging instrument did not have to specify "device" or "drug." [6] *See Barbernell*, 257 S.W.3d at 255; *DeVaughn*, 749 S.W.2d at 68. We reverse the judgment of the court of appeals and remand to that court for consid-

---

2. *DeVaughn*, 749 S.W.2d at 68.

3. *Barbernell*, 257 S.W.3d at 255.

4. *Geter*, 779 S.W.2d at 407.

5. *Id.*; *Thomas*, 621 S.W.2d at 164.

6. The allegation of "25B–NBOMe" itself arguably gave notice that Appellee was accused of delivering a chemical compound and thus a drug rather than a device, but the merits of that possibility are unnecessary to our holding.

eration of the State's remaining points of error.