

## Fourth Court of Appeals
### San Antonio, Texas

## OPINION

No. 04-19-00704-CR

**EX PARTE** James Burke **JARREAU**

From the 216th Judicial District Court, Gillespie County, Texas
Trial Court No. 5552
Honorable N. Keith Williams, Judge Presiding

Opinion by: Irene Rios, Justice
Dissenting Opinion by: Liza A. Rodriguez, Justice

Sitting: Luz Elena D. Chapa, Justice
Irene Rios, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: December 23, 2020

AFFIRMED AND REMANDED

James Burke Jarreau was indicted for the offense of delivery of a dangerous drug. *See* TEX. HEALTH & SAFETY CODE §§ 483.042(a), 483.001(2). Jarreau filed a pretrial application for a writ of habeas corpus, arguing that the relevant penal statutes, sections 483.042(a) and 483.001(2) of the Texas Health and Safety Code, are unconstitutionally vague on their face. The trial court denied Jarreau's application. In two issues, Jarreau contends the trial court erred by denying his pretrial habeas corpus application. We affirm the trial court's order.

### BACKGROUND

The indictment in this case alleged that Jarreau "on or before the 20th day of April, A.D. 2013 . . . did then and there intentionally or knowingly deliver or offer to deliver to MacLean Jeffers a dangerous drug, specifically 25B-NBOMe." *See* TEX. HEALTH & SAFETY CODE

§§ 483.042(a) (criminalizing the delivery or the offer to deliver a dangerous drug), 483.001(2) (defining "dangerous drug"). In his pretrial application for a writ of habeas corpus, Jarreau argued that sections 483.042(a) and 483.001(2) are unconstitutionally vague on their face because "dangerous drug" is defined as "a device or a drug that is unsafe for self-medication." *See id*. § 483.001(2). The trial court held a hearing on Jarreau's application, where Jarreau argued that the statutes in question are unconstitutionally vague on their face because they fail to provide sufficient notice of the prohibited conduct and adequate guidelines for law enforcement. At the end of the hearing, the trial court denied habeas corpus relief.[1] Jarreau appealed.

## PRETRIAL HABEAS CORPUS STANDARDS

"Pretrial habeas, followed by an interlocutory appeal, is an extraordinary remedy." *Ex parte Perry*, 483 S.W.3d 884, 895 (Tex. Crim. App. 2016). This remedy is limited to situations in which the protection of the applicant's substantive rights or the conservation of judicial resources would be better served by interlocutory review. *Id*.; *Ex parte Weise*, 55 S.W.3d 617, 620 (Tex. Crim. App. 2001). Pretrial habeas relief is available "when the applicant alleges that the statute under which he or she is prosecuted is unconstitutional on its face; consequently, there is no valid statute and the charging instrument is void." *Weise*, 55 S.W.3d at 620. In this situation, "the applicant is challenging the trial court's power to proceed."[2] *Id*.

The applicant has the burden to establish his entitlement to habeas corpus relief by a preponderance of the evidence. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). We

---

[1]We note that the trial court previously granted Jarreau's motion to quash the indictment. On appeal, we affirmed the trial court's order, but the Texas Court of Criminal Appeals reversed, holding that the indictment was not required to specify if the "dangerous drug" was a "device" or a "drug" and remanding the case to us for consideration of the remaining issues. *See State v. Jarreau*, 512 S.W.3d 352, 356-57 (Tex. Crim. App. 2017); *see also State v. Jarreau*, 563 S.W.3d 477 (Tex. App.—San Antonio 2018, pet. ref'd) (opinion on remand).

[2]By contrast, a challenge to the constitutionality of a statute as applied to the defendant's particular facts and circumstances is not cognizable in a pretrial application for a writ of habeas corpus. *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 910 (Tex. Crim. App. 2011); *Ex parte Ellis*, 309 S.W.3d 71, 79 (Tex. Crim. App. 2010).

generally review the trial court's ruling on a pretrial application for a writ of habeas corpus for an abuse of discretion. *See id*. However, when, as here, the resolution of the ultimate issue turns on the application of purely legal standards, we review the trial court's ruling de novo. *Ex parte Martin*, 6 S.W.3d 524, 526 (Tex. Crim. App. 1999).

## FACIAL VAGUENESS CHALLENGE

The prohibition against vagueness in criminal statutes is fundamental to due process under the federal constitution. *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018). "The void-for-vagueness doctrine . . . guarantees that ordinary people have 'fair notice' of the conduct a statute proscribes." *Id*. Additionally, "the doctrine guards against arbitrary or discriminatory law enforcement by insisting that a statute provide standards to govern the actions of police officers, prosecutors, juries, and judges." *Id*. Each ground—a lack of fair notice and a lack of standards for law enforcement—provides an independent basis for a facial vagueness challenge. The party raising a vagueness challenge has the burden to establish that the challenged statute is unconstitutional on its face. *State v. Rosseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013).

A facial vagueness challenge has been called "the most difficult challenge to mount successfully because the challenger must establish that no set of circumstances exists under which the statute will be valid." *Santikos v. State*, 836 S.W.2d 631, 633 (Tex. Crim. App. 1999); *see also Rosseau*, 396 S.W.3d at 557 ("The court of appeals properly observed that, to prevail on a facial challenge, a party must establish that the statute always operates unconstitutionally in all possible circumstances."). Historically, when an applicant claimed a criminal statute was vague on its face, he had to demonstrate that it could never be constitutionally applied to any defendant charged with the offense in question, regardless of the facts and circumstances of the case. *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 908 (Tex. Crim. App. 2011). That is, an applicant had to prove no factual circumstances existed under which the statute could be constitutional. *Id*. at 908-09. However,

recent decisions by the United States Supreme Court and the Texas Court of Criminal Appeals indicate that when a penal statute is challenged for vagueness it is unnecessary to establish that the statute operates unconstitutionally in all possible circumstances. *See Johnson v. United States*, 576 U.S. 591, 602-03 (2015); *State v. Doyal*, 589 S.W.3d 136, 144 (Tex. Crim. App. 2019). In *Johnson*, the United States Supreme Court stated: "[A]lthough statements in some of our opinions could be read to suggest otherwise, our *holdings* squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp." 576 U.S. at 602 (emphasis in original); *Doyal*, 589 S.W.3d 144-45 (holding a facial vagueness challenge to a penal statute implicating First Amendment freedoms did not require a showing that there were no possible instances of conduct falling within the statute's prohibition, and recognizing that *Johnson* did not appear to be limited to cases implicating the First Amendment). Thus, we conclude that under the guidance provided by *Johnson* and *Doyal*, Jarreau was not required to establish that sections 483.042(a) and 483.001(2) always operate unconstitutionally.

### FAIR NOTICE OF THE PROHIBITED CONDUCT

In his first issue, Jarreau argues the trial court erred in denying his habeas corpus application because sections 483.042(a) and 483.001(2) fail to provide an ordinary person reasonable notice of what conduct is prohibited.

Jarreau was indicted for delivery of a dangerous drug under section 483.042(a), which provides: "A person commits an offense if the person delivers or offers to deliver a dangerous drug." TEX. HEALTH & SAFETY CODE § 483.042(a). Section 483.042(a) has exceptions. *Id*. § 483.042(a)(1),(2). It is not an offense for a pharmacist or a health care practitioner in the course of practice to deliver a dangerous drug in a properly labeled container. *Id*.; *see State v. Jarreau*, 512 S.W.3d 352, 354 (Tex. Crim. App. 2017) ("Delivery by pharmacists or health care practitioners under customary medical practices is not an offense.").

The Legislature has given the term "dangerous drug" a particular meaning. Section 483.001(2) defines "dangerous drug" as:

> a device or a drug that is *unsafe for self-medication and that is not included in Schedules I through V or Penalty Groups 1 through 4 of Chapter 481 (Texas Controlled Substances Act).* The term includes a device or a drug that bears or is required to bear the legend:
>
> (A) "Caution: federal law prohibits dispensing without prescription" or "Rx only" or another legend that complies with federal law; or
>
> (B) "Caution: federal law restricts this drug to use by or on the order of a licensed veterinarian."

TEX. HEALTH & SAFETY CODE § 483.001(2) (emphasis added).

Jarreau acknowledges that the words "deliver"[3] and "drug"[4] are "defined by statute" and are "clear enough." Jarreau does not complain about the word "self-medication." Jarreau's vagueness argument focuses solely on the word "unsafe," which he asserts is not specific enough to provide ordinary people notice of the conduct prohibited in section 483.042(a).[5] The dissent fully adopts Jarreau's argument. But Jarreau's argument is flawed because it fails to construe "unsafe" in context and demands a level of specificity that the law simply does not require.

When considering the constitutionality of a statute, we begin with the presumption that the statute is valid. *Lykos*, 330 S.W.3d at 909 n.14; *see* TEX. GOV'T CODE § 311.021. We must evaluate the statute not as it operates in practice but as it is written. *Lykos*, 330 S.W.3d at 908-09. To decide

---

[3]"'Deliver' means to sell, dispense, give away, or supply in any other manner." TEX. HEALTH & SAFETY CODE § 483.001(3).

[4]Jarreau cites to the definition of "drug" in the Texas Controlled Substances Act. *See* TEX. HEALTH & SAFETY CODE § 481.002(16).

[5]Jarreau's narrow challenge contrasts with the situation presented in *Johnson v. United States*, where the United States Supreme Court concluded that a section of the Armed Career Criminal Act was vague on its face and unconstitutional because of multiple uncertainties in the provision. 576 U.S. 591, 602 (2015) ("Each of the uncertainties in the [provision] may be tolerable in isolation, but their sum makes a task for us which at best could be only guesswork. Invoking so shapeless a provision . . . does not comport with the Constitution's guarantee of due process.") (internal quotations and citations omitted).

if a statute is vague, we interpret it in accordance with the plain meaning of its language. *Wagner v. State*, 539 S.W.3d 298, 306 (Tex. Crim. App. 2018). "We presume that every word has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible." *Id*. "Words and phrases shall be read in context and construed according to the rules of grammar and common usage." TEX. GOV'T CODE § 311.011(a). "Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." *Id*. § 311.011(b).

To ascertain the plain meaning of the phrase "unsafe for self-medication," we consult the dictionary. The dictionary defines "unsafe" as "not safe," "exposed or exposing to danger," and "unreliable." WEBSTER'S THIRD NEW INT'L DICTIONARY 2509 (1981). It defines "safe"[6] as "secure from threat of danger, harm, or loss;" "not threatening danger;" "harmless;" "free from contaminating qualities;" and "not liable to corrupt or injure." *Id*. at 1998. "Self" is defined as "by oneself;" "independent;" and "from or by means of oneself." *Id*. at 2059. "Medicate" is defined as "to treat with medicine" or "provide with medical care." *Id*. at 1402.

When all the words in section 483.001(2) are properly given effect and construed in context, a "dangerous drug"—defined as "a device or a drug that is unsafe for self-medication"—is easily understood. "Unsafe for self-medication" means devices or drugs that "threat[en] [] danger, harm, or loss;" or "expos[e] to danger;" or contain "contaminating qualities;" or are "liable to corrupt or injure" when a person treats oneself with the device or drug. Therefore, based on section 483.001(2)'s definition, "dangerous drugs" are devices or drugs that are likely to harm or injure, or expose to danger, a person who uses them to treat oneself. Under this definition, it is clear that section 483.042(a) prohibits persons who are not pharmacists or health care practitioners

---

[6]Similarly, the Shorter Oxford English Dictionary defines "safe" as "not liable to be harmed" and "not likely to cause harm or injury." SHORTER OXFORD ENGLISH DICTIONARY 2646 (6th Ed. 2007).

from delivering or offering to deliver devices or drugs that are "unsafe for self-medication" and are not identified as controlled substances. Based on the plain meaning of these statutes, an ordinary person would understand that he is prohibited from delivering or offering to deliver substances that are not on the identified schedules and penalty groups and that are likely to cause harm or injury, or expose to danger, when used without the guidance of a medical professional. An ordinary person would also understand that sections 483.042(a) and 483.001(2) encompass prescription legend drugs because section 483.001(2) expressly says so. An ordinary person would further understand that sections 483.042(a) and 483.001(2) do not encompass over-the-counter drugs, which are commonly understood to be safe for self-medication because they are unlikely to harm or injure or expose to danger. An ordinary person would have "fair notice" that the statutes in question prohibit the delivery of experimental or evolving recreational drugs that are not categorized as controlled substances but are nevertheless likely to harm or injure or expose to danger.

When construed according to the rules of common usage and considered as a whole, sections 483.042(a) and 483.001(2) provide sufficient notice of the prohibited conduct. *See Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972) (concluding that an anti-noise ordinance "marked by flexibility and reasonable breadth rather than meticulous specificity" was nevertheless "clear [as to] what the ordinance as a whole prohibit[ed]."); *Campos v. State*, 623 S.W.2d 657, 659 (Tex. Crim. App. 1981) (holding the failure to statutorily define the word "intoxicated" in a statute prohibiting the sale of alcoholic beverages to an intoxicated person did not render the statute unconstitutionally vague because a "person of common intelligence can determine with reasonable precision what conduct it is his duty to avoid under the statute.").

Contrary to Jarreau's argument, section 483.042(a) does not criminalize the delivery of over-the-counter substances like Tylenol, which are available to the general public because they

are unlikely to harm or injure and, therefore, are commonly understood to be "safe for self-medication." Jarreau also argues that "there are countless substances that might meet the statutory definition of 'drugs,' and that could be 'unsafe for self-medication.'" But the number of substances satisfying section 481.001(2)'s definition is irrelevant. The question is whether the statutes in question provide an ordinary person "fair notice" of the prohibited conduct.

When presented with a facial vagueness challenge, "perfect clarity and precise guidance have never been required." *Ex parte Ellis*, 309 S.W.3d 71, 86 (Tex. Crim. App. 2010); *see Dimaya*, 138 S. Ct. at 1214 ("Many perfectly constitutional statutes use imprecise terms…."); *Kolender v. Lawson*, 461 U.S. 352, 361 (1983) ("[D]ue process does not require 'impossible standards' of clarity…."); *Grayned*, 408 U.S. at 110 ("Condemned to the use of words, we can never expect mathematical certainty from our language."). The law requires only that a statute provide ordinary people "fair notice" of the prohibited conduct. *See Bynum v. State*, 767 S.W.2d 769, 773 (Tex. Crim. App. 1989); *Duncantell v. State*, 230 S.W.3d 835, 845 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) ("A criminal statute need not be mathematically precise; it need only give fair warning, in light of common understanding and practices."). "A statute satisfies vagueness requirements if the statutory language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.'" *Wagner*, 539 S.W.3d at 314 (quoting *Jordan v. De George*, 341 U.S. 223, 231-32 (1951)).

Here, when measured by common understanding and practices, sections 483.042(a) and 483.001(2) provide ordinary people fair notice of the criminalized conduct.

### GUIDELINES FOR LAW ENFORCEMENT

In his second issue, Jarreau argues that sections 483.042(a) and 483.001(2) are vague on their face because they fail to establish definitive guidelines for law enforcement. Again, Jarreau's

argument is premised on his assertion that section 483.001(2) provides "no fixed definition of the term 'dangerous drug'" because the word "unsafe" is not specific enough.

The absence of guidelines for law enforcement, prosecutors, judges, and juries provides an independent basis for a facial vagueness challenge; however, the analysis for a guidelines challenge often overlaps with the analysis for a fair notice challenge. In a guidelines challenge, the inquiry is whether the statute in question "establish[es] minimal guidelines to govern law enforcement." *See Kolender*, 461 U.S. at 358; *Howard v. State*, 617 S.W.2d 191, 192 (Tex. Crim. App. 1979) (concluding loitering ordinance was void on its face when it required law enforcement to determine if a person was "able to give a satisfactory account" of her presence); *Baker v. State*, 478 S.W.2d 445, 449 (Tex. Crim. App. 1972) (concluding a vagrancy statute was vague on its face when "[n]o standard [was] given to guide officers" regarding the meaning of its terms, which defined a "vagrant" as "a person who has no visible means of support" or "no property to support him."). "A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned*, 408 U.S. at 108-09; *see Johnson*, 576 U.S. at 601 (recognizing that a criminal statute was vague on its face when courts "had trouble making sense" of it, it "created numerous splits among the lower federal courts," and it was "nearly impossible to apply consistently.").

*Kolender* demonstrates how a lack of minimal guidelines for law enforcement can render a statute vague on its face. *Kolender* involved a challenge to a loitering statute that required people to account for their presence and provide "credible and reliable" identification when stopped by law enforcement. 461 U.S. at 353. The United States Supreme Court concluded the statute was vague on its face and unconstitutional because it provided "no standard for determining what a suspect had to do" "to provide a 'credible and reliable' identification." *Id*. at 358. It further

concluded the statute "vest[ed] virtually complete discretion in the hands of the police to determine whether the suspect ha[d] satisfied the statute." *Id*. Accordingly, it held the statute unconstitutional on its face because it encouraged arbitrary enforcement. *Id*. at 361.

Here, it cannot be said that the challenged statutes provide "no standard" for law enforcement, prosecutors, judges, and juries, or that they delegate policy matters. *See id*. at 358; *Grayned*, 408 U.S. at 108-09. To the contrary, sections 483.042(a) and 483.001(2) provide "sufficiently distinct" guidelines for law enforcement, prosecutors, judges, and juries to follow. *See Grayned*, 408 U.S. at 114. Sections 483.042(a) and 483.001(2) describe how a device or drug qualifies as a "dangerous drug" and when a person's actions fall within the proscribed conduct. To qualify as a "dangerous drug," the device or drug in question cannot be included in the schedules and penalty groups listed in the Texas Controlled Substances Act and it must be "unsafe for self-medication." TEX. HEALTH & SAFETY CODE § 483.001(2). Drugs that bear or are required to bear a warning or a prescription legend are included in section 483.001(2)'s definition of "dangerous drugs." *Id*. As previously explained, the term "unsafe for self-medication" means devices or drugs that are likely to harm or injure a person or expose a person to danger, when used without the guidance, direction, or supervision of a medical professional. *See id*. Delivery by pharmacists or health care practitioners under customary medical practices is not an offense. *Id*. § 483.042(a)(1)(2). The statutes plainly prohibit the delivery of other types of drugs, such as experimental or evolving recreational drugs, that are not categorized as controlled substances but are nevertheless likely to harm or injure or expose to danger when self-administered. In sum, sections 483.042(a) and 483.001(2) "adequately detail[] the prohibited conduct to the extent that enforcement of the statute[s] [are] not [] relegated to subjective interpretation." *See Bynum*, 767 S.W.2d at 775.

**CONCLUSION**

When properly construed and analyzed as a whole, sections 483.042(a) and 483.001(2) provide both fair notice of the prohibited conduct and sufficient guidelines for law enforcement, prosecutors, juries, and judges. The challenged statutes are not unconstitutionally vague on their face. Therefore, we affirm the denial of Jarreau's pretrial habeas application and remand this case to the trial court for further proceedings.

Irene Rios, Justice

Publish