

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION ON REMAND

No. 04-20-00486-CR

Jemadari Chinua **WILLIAMS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 198th Judicial District Court, Kerr County, Texas
Trial Court No. B19-346
Honorable Rex Emerson, Judge Presiding

Opinion by:    Adrian A. Spears II, Justice

Sitting:    Lori Massey Brissette, Justice
Adrian A. Spears II, Justice
Velia J. Meza, Justice

Delivered and Filed: July 16, 2025

REVERSED AND REMANDED

After a jury trial, Jemadari Chinua Williams was convicted of Aggravated Promotion of Prostitution–Enhanced and was sentenced to forty years of imprisonment. Williams was represented by appointed counsel through the guilt/innocence phase of the trial. He then invoked his right to self-representation, and after being admonished about the risks of self-representation, represented himself during the punishment phase. Williams later filed a pro se notice of appeal. To ensure Williams was properly admonished, this court abated this appeal and ordered the trial court to conduct a hearing to fully admonish Williams of the dangers and disadvantages of self-

representation on appeal. This court then reinstated this appeal and accepted the trial court's recommendation, made after fully admonishing Williams, that Williams be allowed to proceed pro se on appeal. In his pro se brief, Williams brought the following issues:

1.  Whether section 43.04 of the Texas Penal Code is "unconstitutionally vague";

2.  Whether the evidence was insufficient to support his conviction;

3.  Whether "structural error to the probable cause proceedings rendered the commitment order and capias which arose out of said proceedings void, depriving [Williams] of his constitutional protection against unreasonable searches and seizures";

4.  Whether "prosecutorial misconduct and trial court errors denied [Williams] notice, due process, and his right to a fair trial by an impartial jury";

5.  Whether he was "deprived of his right to counsel where his court-appointed attorney tendered him ineffective assistance of counsel prior to and during the guilt/innocence phase of his trial."

Within his fourth issue, Williams brought the following sub-issues:

4a.    Whether the State failed to disclose exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 ().

4b.    Whether there was prosecutorial misconduct during voir dire and closing argument.

4c.    Whether the trial court erred in denying his motion to quash the indictment, resulting in the denial of his right to fair notice of the specific charged offense and preventing him from preparing for trial.

4d.    Whether the "trial court erred in denying his motion to inspect grand jury lists" "where [Williams] has a statutory right to test the qualifications of the grand jurors that indicted him."

4e.    Whether the trial court erred in denying his motion to suppress.

4f.    Whether the trial court erred by allowing photographs to be entered in evidence.

4g.    Whether the trial court erred in denying his motion for directed verdict.

4h.    Whether the trial court "erred by overruling the several objections by" Williams "to the prosecutor's closing argument."

4i.      Whether the trial court erred in overruling his "objection to the jury charge and his request for [a] definitional instruction" regarding "the element 'two or more prostitutes.'"

4j.      Whether the trial court "erred by removing [Williams] from the courtroom during jury deliberations where, during said deliberations, the jury submitted questions to the court."

In an opinion dated October 19, 2022, this court reached Issues 2, 4c, and 4g.[1] *See Williams v. State*, 668 S.W.3d 59 (Tex. App.—San Antonio 2022), *rev'd*, 685 S.W.3d 110 (Tex. Crim. App. 2024) ("*Williams I*"). Explaining that a "challenge to a trial court's denial of a motion for directed verdict is reviewed under the same standard used to review a sufficiency challenge," this court held that the evidence was sufficient to support his conviction for aggravated promotion of prostitution. *Id*. at 62 n.1, 65. Relying on *State v. Ross*, 573 S.W.3d 817, 820 (Tex. Crim. App. 2019), this court also held that the trial court should have granted Williams's motion to quash the indictment and the error was harmful. *See Williams I*, 668 S.W.3d at 66-68. This court thus reversed the trial court's judgment. *Id*. at 69.

After granting the State's petition for discretionary review, the Texas Court of Criminal Appeals noted that this court had "quoted the following maxim from *Ross*: '[I]f the prohibited conduct is statutorily defined to include more than one manner or means of commission, then the State must, upon timely request, allege the particular manner or means it seeks to establish.'" *Williams v. State*, 685 S.W.3d 110, 112-13 (Tex. Crim. App. 2024) ("*Williams II*"). According to the court of criminal appeals, this court "construed that maxim to mean that the State had to pick one of the methods allowed by statute and alleged in the indictment." *Id*. at 113. The court of criminal appeals noted that this court "held solely as a matter of notice and did not hold that the

---

[1]The original panel in this appeal was Justice Chapa, Justice Watkins, and Justice Rodriguez. On remand, Justice Brissette, Justice Spears, and Justice Meza have been assigned pursuant to Rule 9(k)(iii) of this court's Internal Operating Procedures for the Handling of Cases.

different statutory methods of commission were different offenses." *Id*. The court of criminal appeals then stated the following with respect to separate offenses:

> Understanding the State's brief to implicitly raise the issue, [Williams] argues in his brief that the six methods of committing aggravated promotion of prostitution are separate offenses. But he did not raise this claim at the trial court or in the court of appeals. To the contrary, his claim before both courts treated the six methods as alternative manners and means, and his argument was that there was a notice problem with the indictment not being specific enough. Because he did not timely raise the separate-offenses issue to the trial court (failing in fact, to raise it at all), that issue has been forfeited. Even if it had not been forfeited at trial, the issue is not properly before us because [Williams] did not raise it in the court of appeals, and that court did not resolve the issue on its own. Consequently, we will assume that the six methods of committing aggravated promotion of prostitution are alternative methods of committing the same offense.

*Id*. at 113-14 (citations omitted). The court of criminal appeals then explained that the "maxim articulated by *Ferguson [v. State*, 622 S.W.2d 846, 849-51 (Tex. Crim. App. [Panel Op.] 1981),] and later recited by *Ross*[,] developed as an exception to the general rule that statutory definitions do not have to be included in a charging instrument." *Williams II*, 685 S.W.3d at 115. "Even in that context, it can, at most, require the State allege more detail in a charging instrument; it would never require the State to *abandon* a manner and means in the charging instrument." *Id*. (emphasis in original). "As long as the charging instrument specifies all the manner and means upon which the State is permitted to rely, there is no notice problem." *Id*. The court of criminal appeals thus reversed this court's judgment and remanded the cause so that we could "address [Williams's] remaining points of error." *Id*.

On remand, Williams's appointed counsel filed a motion for leave to file a supplemental brief. Emphasizing that Williams had previously filed a pro se brief, his appointed counsel "[f]or the sake of justice and the law" requested leave to file a supplemental brief on remand. We granted the motion and allowed appointed counsel to file a supplemental brief on remand. In the supplemental brief, appointed counsel brought the following issues:

1. The trial court erred in denying Williams's motion to quash because the indictment used undefined terms of indeterminate or variable meaning, and more specific pleading was required.

2. The jury charge was erroneous because it failed to require unanimity on each element of one of the six alleged aggravated promotion of prostitution "offenses" in violation of the United States and Texas Constitutions.

Because we agree the indictment used undefined terms of indeterminate or viable meaning, we conclude the trial court should have granted Williams's motion to quash.

BACKGROUND

Williams was arrested after communicating via telephone and text with Investigator Hirl, an undercover officer, who posed as a rancher in the Kerrville area named "Scott." Williams agreed to provide "Scott" with a group of women for sexual services for a party "Scott" was having at his ranch. Williams also offered to provide illegal drugs, which could be purchased on a "Point of Sale basis." On the agreed day, Williams called "Scott" to say that he and the women were on their way. Investigator Hirl testified that he later received another phone call from Williams, who stated that he was unable to find the address given and was "out in the middle of nowhere." Hirl testified that he tried to guide Williams to the ranch, but then told Williams he would come down and meet Williams and the women at the ranch's gate. Hirl testified that the other officers involved in the operation were waiting at the address given to Williams and had seen Williams's vehicle pass them. According to Hirl, Williams called again, saying that he had pulled off the side of the road and would wait there. Hirl then told the other officers to go ahead with the arrest.

Investigator Purvis testified that on the day of the arrest, he had let his team know when Williams was en route and provided a description of the vehicle driven by Williams, a "red Jeep." After a red jeep passed officers who were stationed at the address given to Williams, Purvis was advised by Hirl that Williams was lost. Purvis was able to listen to the conversation between Hirl and Williams. He heard Hirl tell Williams that Hirl would come out to meet Williams. Hirl then

told Purvis that "the suspect is parking now." According to Purvis, he then saw a red Jeep park and turn off its lights. Purvis saw a "black male get out of a vehicle with a white female." Purvis testified he called the marked units to approach. The black male and white woman were detained, along with three other women who were inside the Jeep. A search of the Jeep and the individuals yielded "some heroin, syringes, and some pills." Williams and the four women were arrested. As a result of a search incident to an arrest, the officers found "methamphetamine and a methamphetamine pipe" on Williams.

Purvis testified the four women arrested were Julia Nicole Anderson, Nichole Mendoza, Maria Luna, and Chelsea Hogan. According to Purvis, during his interviews with the women, one of them described Williams as "being a pimp" and said "they were going to try to come up [to Kerrville] and make some money." Purvis also testified that the women were "very uncooperative" and some denied being prostitutes.

**MOTION TO QUASH**

In his appointed counsel's supplemental brief, Williams argues the trial court erred in denying his motion to quash because the indictment uses undefined terms of indeterminate or variable meaning, and more-specific pleading was required. In response, the State argues that Williams had sufficient notice by the plain meaning of the terms at issue. We review a trial court's ruling on a motion to quash an indictment *de novo*. *State v. Jarreau*, 512 S.W.3d 352, 354 (Tex. Crim. App. 2017).

The indictment in this case charged Williams as follows:

IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS

THE GRAND JURORS FOR THE COUNTY OF KERR, STATE OF TEXAS, DULY SELECTED, IMPANELED, SWORN, CHARGED AND ORGANIZED AS SUCH AT THE JANUARY TERM, A.D., 2019, OF THE 198TH JUDICIAL DISTRICT COURT OF SAID COUNTY, UPON THEIR OATHS PRESENT IN

AND TO THE COURT, THAT JEMADARI CHINUA WILLIAMS, DEFENDANT,

ON OR ABOUT APRIL 5, 2019, AND BEFORE THE PRESENTMENT OF THIS INDICTMENT, IN SAID COUNTY AND STATE, DID THEN AND THERE KNOWINGLY OWN, INVEST IN, FINANCE, CONTROL, SUPERVISE, OR MANAGE A PROSTITUTION ENTERPRISE THAT USED AT LEAST TWO PROSTITUTES.

PRIOR CONVICTION ENHANCEMENT:
AND IT IS FURTHER PRESENTED IN AND TO SAID COURT THAT, PRIOR TO THE COMMISSION OF THE AFORESAID OFFENSE, ON THE 21ST DAY OF JULY, 2010, IN CAUSE NUMBER 27-CR-10-20273 IN THE HENNEPIN CRIMINAL DOWNTOWN COURT OF HENNEPIN COUNTY, MINNESOTA, THE DEFENDANT WAS CONVICTED OF THE FELONY OFFENSE OF AGGRAVATED ROBBERY-1ST DEGREE.

AGAINST THE PEACE AND DIGNITY OF THE STATE.

Williams argues several of the statutory methods of committing the offense alleged in this indictment are "undefined terms of variable meaning," including "controls," supervises," "manages," "invests in," and "finances." Williams argues that he was entitled, at a minimum, to pleading notice of *how* the State contended he knowingly owned, invested in or financed, managed or supervised, or controlled a prostitution enterprise. Further, Williams emphasizes that the indictment is not saved by the State's "conceptual groupings" argument. Williams contends the indictment contains at least three distinct conceptual groupings: (1) owning; (2) investing in or financing; and (3) controlling, supervising, or managing. While "investing in" is conceptually similar to "financing", and "controlling" is conceptually similar to "supervising" or "managing," Williams emphasizes that these groupings are conceptually distinct from each other and from "owning." According to Williams,

> The investor in [a store] does not own the enterprise, nor controls it. The store manager controls and supervises a part of the [store's] enterprise, but she does not necessarily invest in or finance it, and does not "own" it. The owner of the [store's] enterprise does not necessarily manage or control it. There is a fuzzy line between investing and financing, but a clear line between investing or financing on the one hand, and owning on the other. The fact that the verbs are so conceptually disparate

militates in favor of a requirement that the State specify *how* the verbs were committed.

(emphasis added).

The offense in an indictment "must be set forth in plain and intelligible words." TEX. CODE CRIM. PROC. art. 21.02(7). "Everything should be stated in an indictment which is necessary to be proved." *Id*. art. 21.03. An indictment is sufficient if it

> charges the commission of the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged . . . .

*Id*. art. 21.11. The face of an indictment, among other things, must allege the facts necessary to "give the defendant notice of precisely what he is charged with." *Terry v. State*, 471 S.W.2d 848, 852 (Tex. Crim. App. 1971). An indictment must go beyond the statutory language only when the statute is not "completely descriptive of the offense." *Haecker v. State*, 571 S.W.2d 920, 921 (Tex. Crim. App. [Panel Op.] 1978).

Because a defendant is presumed to be on notice of statutory definitions, when a term is defined in the penal statutes, an indictment that tracks the elements of a statute, as a general rule, provides adequate notice to the accused of the charged offense. *See State v. Barbernell*, 257 S.W.3d 248, 251 (Tex. Crim. App. 2008). That is, "[w]hen a statutory term or element is defined by a statute, the charging instrument does not need to allege the definition of the term or element." *State v. Zuniga*, 512 S.W.3d 902, 907 (Tex. Crim. App. 2017); *Barbernell*, 257 S.W.3d at 251. However, there are exceptions to this general rule. One exception, as noted above, was addressed by this court in *Williams I*. A second exception is the one now brought by Williams on remand. It applies when "the statutory language fails to be completely descriptive" of the offense because it "uses an

undefined term of indeterminate or variable meaning."[2] *Zuniga*, 512 S.W.3d at 907. In such circumstances, "more specific pleading [is] in order to notify the defendant of the nature of the charges against him." *Id.*; *see Barbernell*, 257 S.W.3d at 251; *State v. Mays*, 967 S.W.2d 404, 407 (Tex. Crim. App. 1998). Williams argues the indictment in this case, which tracked the language of the statute, used undefined terms of indeterminate or variable meaning, and he was entitled to more specific pleading to be notified of the charges against him.

In analyzing whether a charging instrument provides adequate notice, we engage in a two-step analysis. *Zuniga*, 512 S.W.3d at 907. First, we identify the elements of the offense. *Id.* Next, we consider whether the statutory language is sufficiently descriptive of the charged offense. *Id.* A person commits the offense of aggravated promotion of prostitution if the person "knowingly owns, invests in, finances, controls, supervises, or manages a prostitution enterprise that uses two or more prostitutes." TEX. PENAL CODE § 43.04(a). The parties in this case dispute whether the statutory methods of committing aggravated promotion of prostitution (i.e, owns, invest in, finances, controls, supervises, or manages) constitute separate offenses or whether they are manners and means. Indeed, Williams argues in his jury charge issue that they are separate offenses. However, in his motion to quash filed in the trial court, Williams argued that they are manners and means of committing the offense. Thus, like the court of criminal appeals in *Williams*

---

[2]Williams requests that we address this second exception on remand, emphasizing that Williams raised this argument in his pro se motion to quash, that his trial counsel brought this argument at the motion to quash hearing ("I think that they need to have told us very specifically *what it is that they mean* by the terms that they claim are a manner and means."), and that the trial court denied relief. The State argues that we lack authority to address this issue on remand. We disagree with the State and conclude we are free to review this issue as unassigned error. *See Williams II*, 685 S.W.3d at 113 n.16 (recognizing that appellate courts "may review unassigned error—a claim that was preserved in the trial court but was not raised by either party on appeal") (quoting *Pfeiffer v. State*, 363 S.W.3d 594, 599 (Tex. Crim. App. 2012)); *Sanchez v. State*, 209 S.W.3d 117, 120-22 (Tex. Crim. App. 2006) ("[A]ppellate courts are free to review 'unassigned error'—a claim that was preserved in the trial below but was not raised on appeal."); *Pena v. State*, 191 S.W.3d 133, 136 (Tex. Crim. App. 2006) ("We have previously held, and reaffirm today, that appellate courts are free to review 'unassigned error'—a claim that was preserved in the trial below but was not raised on appeal."); *Sanchez v. State*, 182 S.W.3d 34, 39 (Tex. App.—San Antonio 2005), *aff'd*, 209 S.W.3d 117 (Tex. Crim. App. 2006) ("We conclude that upon remand this [c]ourt is vested with jurisdiction to consider unassigned error.").

*II*, we will assume for purposes of this issue that they are manners and means of committing the offense. *See Williams II*, 685 S.W.3d at 113-14.

We next consider whether the statutory language is sufficiently descriptive of the charged offense. *Zuniga*, 512 S.W.3d at 907. The statutory methods of committing the offense (i.e, owns, invest in, finances, controls, supervises, or manages) are not defined by statute.[3] Rules of statutory construction provide that undefined terms in a statute "are to be given their plain and ordinary meaning." *Floyd v. State*, 575 S.W.2d 21, 23 (Tex. Crim. App. [Panel Op.] 1978). "In determining plain meaning, words and phrases must be read in context and construed according to the rules of grammar and usage." *Wagner v. State*, 539 S.W.3d 298, 306 (Tex. Crim. App. 2018); *see also* TEX. GOV'T CODE § 311.011(a) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage.").

In considering whether the indictment was sufficient, the court of criminal appeals has held that the following undefined terms required more-specific pleading:

- "torture" a dog in the context of an information alleging animal cruelty, *see Haecker*, 571 S.W.2d at 921-22;

- "cause bodily injury" in the context of an indictment alleging aggravated robbery by using a deadly weapon, *see Cruise v. State*, 587 S.W.2d 403, 404-05 (Tex. Crim. App. [Panel Op.] 1979);

- "receive" bets and offers in the context of an indictment alleging gambling promotion, *see Jeffers v. State*, 646 S.W.2d 185, 187-88 (Tex. Crim. App. [Panel Op.] 1981), *overruled on other grounds by Adams v. State*, 707 S.W.2d 900 (Tex. Crim. App. 1986);

- "threaten" in the context of an indictment alleging retaliation, *see Doyle v. State*, 661 S.W.2d 726, 730-31 (Tex. Crim. App. 1983);

- "destroy" tangible property in the context of an indictment alleging criminal mischief, *see Miller v. State*, 647 S.W.2d 266, 267 (Tex. Crim. App. 1983); and

---

[3]We note that "finance" is defined for purposes of chapter 38 of the Penal Code, but that definition does not apply outside of chapter 38. *See* TEX. PENAL CODE § 38.01(4) (providing that "[i]n this chapter: . . . (4) 'Finance' means to provide funds or capital or to furnish with necessary funds").

- "start a fire" in the context of an indictment alleging arson, *see Castillo v. State*, 689 S.W.2d 443, 449 (Tex. Crim. App. 1984).

Here, the statutory methods of committing the offense at issue have several common meanings. "Control" means (1) "to exercise restraining or directing influence over"; (2) "to have power over"; (3) to reduce the incidence or severity of especially to innocuous levels"; and (4) "to incorporate suitable controls in." *Control*, MERRIAM WEBSTER.COM, https://www.merriam-webster.com/dictionary/control (last visited July 8, 2025). "Supervise" means "to be in charge of." *Supervise*, MERRIAM WEBSTER.COM, https://www.merriam-webster.com/dictionary/supervise (last visited July 8, 2025). "Manage" means the following:

> to handle or direct with a degree of skill: such as (a) to exercise executive, administrative, and supervisory direction of; (b) to treat with care; (c) to make and keep compliant.

*Manage*, MERRIAM WEBSTER.COM, https://www.merriam-webster.com/dictionary/manage (last visited July 8, 2025). "Manage" also means "to direct the professional career of"; "to succeed in accomplishing"; and "to work upon or try to alter for a purpose." *Id*. "Invests in" means "to use money for (something) in order to earn more money"; "to spend money for building or improving (something)"; "to give (time or effort) in order to do something or make something better"; and "to spend money on (something useful or helpful to oneself)." *Invests In*, MERRIAM WEBSTER.COM, https://www.merriam-webster.com/dictionary/invests%20in (last visited July 8, 2025). "Finance" means "to raise or provide funds or capital for"; "to furnish with necessary funds"; and "to sell something to (someone) on credit." *Finance*, MERRIAM WEBSTER.COM, https://www.merriam-webster.com/dictionary/finance (last visited July 8, 2025).

We agree with Williams that these statutory methods of committing the offense are indefinite and variable. For example, a person can *manage* someone by exercising executive, administrative, and supervisory direction of that person. A person can also manage someone by

treating that person with care, by making and keeping the person compliant, or by directing the professional career of a person. A person can *invest in* something by contributing money, by contributing capital, by contributing effort, or by contributing time. A person can *finance* something by providing funds, by providing capital, by loaning money or even cosigning a loan. A person can *control* someone by giving orders, by restricting resources, or by restricting people. Given the multitude of common definitions for these terms, we cannot conclude that tracking the language of the statute in this case provided Williams with sufficient notice of the charges against him. Even when read in context of section 43.04 (a), these undefined terms are so indeterminate and variable that they are not completely descriptive of the offense. *See Zuniga*, 512 S.W.3d at 907; *see also* TEX. PENAL CODE § 43.04(a) (providing that a person commits the offense of aggravated promotion of prostitution if the person "knowingly owns, invests in, finances, controls, supervises, or manages a prostitution enterprise that uses two or more prostitutes"). We also agree with Williams that a "conceptual groupings" argument cannot save the indictment because any such applicable groupings (i.e., "owning," "investing in or financing," and "controlling, supervising, or managing") are conceptually distinct from each other. Thus, the indictment was defective in form, and the trial court erred in failing to grant Williams's motion to quash. *See Olurebi v. State*, 870 S.W.2d 58, 61 (Tex. Crim. App. 1994) (explaining that a complaint that an indictment does not provide adequate notice alleges a defect of form). The trial court should have required the State to specify in the indictment how these statutory methods were committed by Williams.

Having concluded the indictment was defective in form, we must now consider whether the defect of form prejudiced Williams's substantial rights. *See* TEX. CODE CRIM. PROC. art. 21.19 ("An indictment shall not be held insufficient, nor shall the trial, judgment, or other proceedings thereon be affected, by reason of any defect of form which does not prejudice the substantial rights

of the defendant."); TEX. R. APP. P. 44.2(b) (providing that non-constitutional error that does not affect substantial rights must be disregarded). In reviewing the entire record, we consider whether Williams had sufficient notice of *how* the State intended to show Williams owned, invested in, financed, controlled, supervised, or managed the prostitution enterprise. *See Sanchez v. State*, 120 S.W.3d 359, 367 (Tex. Crim. App. 2003); *Adams v. State*, 707 S.W.2d 900, 903 (Tex. Crim. App. 1986). If Williams had actual notice, then his substantial rights would not have been affected by the trial court's failure to grant his motion to quash the indictment. *See Kellar v. State*, 108 S.W.3d 311, 313 (Tex. Crim. App. 2003) ("When a motion to quash is overruled, a defendant suffers no harm unless he did not, in fact, receive notice of the State's theory against which he would have to defend.").

At the hearing on the motion to quash, the State gave no indication of how it was alleging Williams owned, invested in, financed, controlled, supervised, or managed the prostitution enterprise. The prosecution did refer, in a conclusory fashion, to the trial court's "standing discovery order" and the State's "open file policy." However, the record does not show what information the defendant had access to as a result of the "standing discovery order" and the State's "open file policy." Indeed, we find it significant that the State did not file or state in open court that it had complied with article 39.14. *See* TEX. CODE CRIM. PROC. art. 39.14(j) (providing that "before trial, each party shall acknowledge in writing or on the record in open court the disclosure, receipt, and list of all documents, items, and information provided to the defendant under this article" relating to discovery). Additionally, while the State did file notice of its intention to use "bad acts and extraneous matters," those extraneous bad acts related to three prior offenses for robbery and one previous offense for assault. The notice of extraneous bad acts appeared not to relate to any "prostitution enterprise." Thus, the facts presented in this case are distinguishable from other cases where appellate courts have found the defendant did have actual notice of the

State's intended theory of prosecution. *See State v. Peterson*, 612 S.W.3d 508, 515 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd) (holding the prosecution's various pretrial filings, considered together with the indictment's specific factual allegations, provided adequate notice to the defendant); *Buxton v. State*, 526 S.W.3d 666, 683 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (holding, in a continuous-sexual-abuse-of-child case, that the defendant had ample notice of the offense when the indictment was considered together with the probable cause affidavit and the prosecution's notices of intention to use outcry statements and extraneous offenses); *State v. Stukes*, 490 S.W.3d 571, 577 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (holding in continuing-family-violence case, that the defendant "had ample notice in addition to that provided by the indictment" when the prosecution provided defense counsel with offense reports and videotapes regarding two predicate assaults). On this record, we conclude Williams did not receive sufficient pretrial notice of the charges against him.

Additionally, we conclude the lack of notice impacted Williams's ability to prepare a defense. *See Adams*, 707 S.W.2d at 903. The record reflects that it was not until opening statement that the prosecution gave any indication how it intended to show Williams committed the offense: "So you are going to hear actual conversations with [the undercover investigators] talking about him operating and *managing* to get these prostitutes up to our county and to bring drugs with them at a cost, okay?" Williams had no response to this accusation; his only defense was the women found in the car with him were not prostitutes. Thus, we conclude the impact on his defense was sufficient to require reversal of the trial court's judgment. *See* TEX. CODE CRIM. PROC. art. 21.19 ("An indictment shall not be held insufficient, nor shall the trial, judgment, or other proceedings thereon be affected, by reason of any defect of form which does not prejudice the substantial rights of the defendant."); TEX. R. APP. P. 44.2(b) (providing that non-constitutional error that does not affect substantial rights must be disregarded). For these reasons, we hold the trial court erred in

failing to grant Williams's motion to quash and in failing to order the State to provide more specificity with the statutory methods of committing the offense.

## CONCLUSION

For the reasons stated above, we reverse the trial court's judgment and remand for proceedings consistent with this opinion, including the quashing of the indictment.[4] *See* TEX. CODE CRIM. PROC. art. 28.05 ("If the motion to set aside or the exception to the indictment in cases of felony be sustained, the defendant shall not therefor be discharged, but may immediately be recommitted by order of the court, upon motion of the State's attorney or without motion; and proceedings may afterward be had against him as if no prosecution had ever been commenced."); *Id*. art 28.09 ("If the exception to an indictment or information is sustained, the information or indictment may be amended if permitted by Article 28.10 of this code, and the cause may proceed upon the amended indictment or information."); *Id*. art. 28.10 (allowing amendment of indictment with regard to "a matter of form or substance").[5]

Adrian A. Spears II, Justice

PUBLISH

---

[4]Having held the trial court's judgment should be reversed and the cause remanded, we need not consider Williams's remaining issues.

[5]We note that at oral argument, Williams requested this court to set bond pending a final determination of the appeal by the Texas Court of Criminal Appeals on discretionary review. Williams should file a motion in compliance with article 44.04(h) of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. art. 44.04(h) (providing for reasonable bail when court of appeals reverses a conviction); *see Lewis v. State*, 706 S.W.3d 834, 836-37 (Tex. Crim. App. 2024).